**Robert P. KOCH et al., Appellants,**

v.

**David L. YUNICH, Chairman and Chief Executive Officer, et al., Appellees.**

**No. 450, Docket 75–7367.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1975.

Decided April 2, 1976.

Frederick J. Ludwig, New York City, for appellants.

James P. McMahon, Brooklyn (Stuart Riedel, Terrance J. Nolan, Brooklyn, Nancy A. Serventi, New York City, of counsel), for appellee Yunich.

Diane R. Eisner, Brooklyn (W. Bernard Richland, Corp. Counsel, New York City, L. Kevin Sheridan, New York City, of counsel), for appellee D'Ambrose.

Before MANSFIELD, OAKES and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

This appeal presents a multi-pronged attack upon the constitutionality of two sections of the New York Civil Service Law. The first is Section 80 [1] providing that lay-

1. N.Y. Civil Service Law § 80(1) and (2) (McKinney 1973) provides in part:

1. Suspension or demotion. Where, because of economy, consolidation or abolition

offs and demotions for economic reasons from positions achieved by competitive examination shall be made on the basis of seniority determined by the date of permanent appointment to the classified service generally rather than to the particular position held. The second is Section 85 [2] giving veterans of World Wars I and II and the Korean and Vietnam Wars certain preferences in retention upon abolition of positions. Appeal is from an order by the United States District Court for the Eastern District of New York, Walter Bruchhausen, *Judge*, dismissing the complaint [3] of certain Transit Authority police captains, lieutenants and sergeants, seeking declaratory and injunctive relief, as well as the convening of a three-judge court. Appellee Yunich is the chairman of the New York City Transit Authority; appellee D'Ambrose is the personnel director and chairman of the New York City Civil Service Commission. Because we believe that appellants can prove under their complaint no set of facts which would entitle them to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957), that their constitutional claims are wholly insubstantial and therefore do not require a three-judge court, *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973), and that their claims under New York law have been more than adequately disposed of in a state court proceeding initiated after the present federal complaint,[4] we affirm the dismissal.

---

of functions, curtailment of activities or otherwise, positions in the competitive class are abolished or reduced in rank or salary grade, suspension or demotion, as the case may be, among incumbents holding the same or similar positions shall be made in the inverse order of original appointment on a permanent basis in the classified service in the service of the governmental jurisdiction in which such abolition or reduction of positions occurs, subject to the provisions of subdivision seven of section eighty-five of this chapter . . . .

2. Continuous service. Except as otherwise provided herein, for the purposes of this section the original appointment of an incumbent shall mean the date of his first appointment on a permanent basis in the classified service followed by continuous service in the classified service on a permanent basis up to the time of the abolition or reduction of the competitive class positions. . . .

By virtue of N.Y. Public Authorities Law § 1210(2) (McKinney 1970):

The appointment, promotion and continuance of employment of all employees of the [transit] authority shall be governed by the provisions of the civil service law and the rules of the municipal civil service commission of the city. . . . Employees of the authority shall be subject to the provisions of the civil service law.

Prior to 1972 Section 80 provided for determination of seniority on the basis of service in the "competitive class," *i. e.*, in positions for which competitive examinations are used to determine merit and fitness, as opposed to the classified service generally, which includes the labor class, the exempt class, the non-competitive class and the competitive class. *See* N.Y. Civil Service Law § 80, Historical Note, at 350 (McKinney 1973).

2. N.Y. Civil Service Law § 85(7) (McKinney 1973) provided at the time of the complaint:

Preference in retention upon the abolition of position. In the event of the abolition or elimination of any position in the civil service for which eligible lists [resulting from competitive examinations] are established or any position the incumbent of which is encompassed by section eighty-a of this chapter [dealing with non-competitive class positions], any suspension, demotion or displacement shall be made in the inverse order of the date of original appointment in the service subject to the following conditions: (1) blind employees shall be granted absolute preference in retention; (2) the date of such original appointment for disabled veterans shall be deemed to be sixty months earlier than the actual date, determined in accordance with section thirty of the general construction law; and (3) the date of such original appointment for non-disabled veterans shall be deemed to be thirty months earlier than the actual date, determined in accordance with section thirty of the general construction law.

A 1975 amendment, immaterial here, added a fourth preference category, for certain competitive-class employees disabled in the line of duty.

3. Injunctive relief is sought for alleged violations of 42 U.S.C. §§ 1983, 1985(3) and Sections 1 and 5 of the Fourteenth Amendment. Jurisdiction is asserted for injunctive relief under 28 U.S.C. § 1343(3) and for a declaratory judgment under 28 U.S.C. §§ 2201, 2202. A three-judge court is sought to be convened under 28 U.S.C. §§ 2281, 2284.

4. The New York Supreme Court, Special Term, Part III, per Charles R. Rubin, J., granted a

■ Appellants claim they can or will be [5] deprived of four rights guaranteed by the Constitution of the United States: (1) a substantive due process right against arbitrary and capricious denial of property in the form of public employment; (2) a procedural due process right to some kind of hearing before suspension or demotion; (3) an equal protection right to be free from discrimination in demotion or layoff on the basis both of race and color and of merit and fitness, all under the Fourteenth Amendment; and (4) a right, with respect to their pension plans, against impairment of the obligation of contracts under Article I, Section 10. We consider each of the claims separately.

Appellants first argue that Section 80 of the New York Civil Service Law which requires termination by seniority based upon original permanent retention in the civil service, as opposed to seniority based upon tenure in the position currently held, violates substantive due process. This argument cannot be sustained. The substantive due process test applicable since the 1930's in the area of social and economic legislation is whether the challenged law has a rational relation to a valid state objective. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563, 574 (1955) (prohibition of eye examinations in retail stores rationally related to state objectives of freeing optome-trists from taints and temptations of commercialism); *Nebbia v. New York,* 291 U.S. 502, 529–37, 54 S.Ct. 505, 512–16, 78 L.Ed. 940, 952–57 (1934) (price controls of milk rationally related to state objective of protecting consumers and industry, and preventing waste). While one might question the wisdom of a statute such as Section 80 of the New York Civil Service Law which works against a diligent, ambitious officer who rises quickly through the ranks and holds high positions for longer periods than employees who started earlier but are promoted less often, the rationality of rewarding the total length of employment in government service lies beyond the realm of judicial dispute.

■ Similarly Section 85(7) of the New York Civil Service Law cannot be attacked on substantive due process grounds; it is certainly rational to give veterans retention preference in the event positions are abolished. *Russell v. Hodges,* 470 F.2d 212, 218 (2d Cir. 1972) (desire to compensate for disruption of previous life and employment and expression of gratitude for service is rational basis for veteran's preference); *August v. Bronstein,* 369 F.Supp. 190, 193 (S.D.N.Y.) (three-judge court), *aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). The preference does not become irrational merely because it exists simultaneously with a state constitutional provision [6] allowing certain veterans modest

declaratory judgment for appellees here in an Article 78 proceeding initiated after the present federal court complaint. *Koch v. Yunich,* No. 12309–75 (Sup.Ct., Kings Cty., Sept. 26, 1975). In the federal court action no defense of res judicata was asserted under Fed.R.Civ.P. 8(c). Since we affirm dismissal for failure to state a claim we need not consider the difficult res judicata problems engendered by the state court action. *Compare Taylor v. N. Y. City Transit Authority,* 433 F.2d 665 (2d Cir. 1970), *with Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

5. They claim to be threatened by a layoff and demotion list compiled by appellee Yunich and by a termination directive issued by appellee D'Ambrose in June, 1975, setting forth in substance the provisions of Sections 80 and 85 of the Civil Service Law pertaining to layoffs ac-cording to inverse order from seniority in the classified service, note 1 *supra,* as modified by veterans' preferences, note 2 *supra.*

6. Article V § 6 of the N.Y. Constitution provides:

Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable . . shall be competitive; provided, however, that any member of the armed forces of the United States who served therein in time of war . . . shall be entitled to receive . . . additional credit in a competitive examination for original appointment and . . . . in an examination for promotion . . . . . No such member shall receive the additional credit granted by this section after he has received one appointment, either original en-

preferential treatment only once in appointments or promotions in civil service.

The claim of lack of procedural due process is also without substance. Relying on what were the lodestar cases of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), appellants argue that they are entitled to some kind of hearing before their demotion. *But see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, 44 U.S.L.W. 4224 (1976); Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267 (1975). However, all the employment termination cases cited by appellants, *i. e., Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *Burns v. Elrod,* 509 F.2d 1133 (7th Cir. 1975), *cert. granted,* 423 U.S. 821, 96 S.Ct. 33, 46 L.Ed.2d 37, 44 U.S.L.W. 3200 (1975), and *Eley v. Morris,* 390 F.Supp. 913 (N.D.Ga.1975), are concerned with discretionary removal. In such cases Section 75 of the New York Civil Service Law would require notice and hearing. Here we are concerned only with economic demotions which do not involve any exercise of discretion. Appellees are under a statutory mandate. Absent a claim that the seniority computation is based on erroneous factual premises, there is nothing which a hearing would elucidate. In such a situation, it would border on the absurd to hold that appellants may be denied procedural due process, especially in light of the uniform interpretation of *Arnett, supra,* that a post-termination evidentiary hearing

is generally sufficient to protect interests in one's employment meriting due process protection. *See Eley v. Morris, supra,* 390 F.Supp. at 920, and cases cited therein. *See also Mathews v. Eldridge, supra,* 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 32, 44 U.S.L.W. at 4229. Since none of the appellants has as yet been demoted and none therefore has been denied a post-demotion hearing, we need not reach any question pertaining to the requirement of such a hearing in the facts of a particular case.

Appellants' two-pronged equal protection claim is equally without merit.[7] Their first argument is that demotion on the basis of civil service seniority will produce a greater adverse impact upon employees of black and other minority groups than would demotion on the basis of seniority determined by tenure in position. This claim is insubstantial on its face because it does not allege why or how the current system would result in greater hardship to minorities than would the former system. Complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions. *Powell v. Jervis,* 460 F.2d 551, 553 (2d Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270, 1275 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Powell v. Workmen's Compensation Board of the State of New York,* 327 F.2d 131, 137 (2d Cir. 1964).

---

trance or promotion, from an eligible list on which he was allowed the additional credit granted by this section.

7. To the extent that appellants' rather prolix complaint might be construed to contain a third argument alleging that Section 85(4) violates the Equal Protection Clause for providing unequal treatment for veterans and non-veterans, it was properly dismissed. The test in considering the constitutionality of legislation that requires different treatment for persons placed by statute into different classes is whether the criteria used to classify are wholly unrelated to the objective of statute. *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225, 229 (1971). As was explained in *August v. Bronstein,* 369 F.Supp. 190 (S.D.

N.Y.) (three-judge court), *aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), a preference for veterans is "a token of gratitude conferred by New York upon its sons who enter their country's service in time of war, and perhaps an encouragement to return to the service of the State thereafter." *Id.* at 193. The three-judge district court in that case upheld the "modest veterans' preference" provided for in Section 85(2) of five points added to civil service examinations of non-disabled veterans. *Id.* Since the veterans' preference provided for in Section 85(7) serves the same function, and the classification of veterans and non-veterans is obviously substantially related to the objective of the statute, appellants could not have sustained a claim of violation of equal protection.

Since no such facts are alleged here,[8] this claim was properly dismissed.

Appellants also claim that they are discriminated against because patrolmen are demoted on the basis of merit and fitness only while they, as sergeants, lieutenants and captains, are demoted not just on the basis of merit and fitness but also on the basis of length of service in a prior position. This claim is totally without merit. Appellants have failed to recognize that Transit Authority patrolmen and officers are all demoted according to seniority in the classified service. The fact, if it is a fact, that patrolmen have generally entered the classified service as patrolmen and therefore have seniority only on the basis of merit and fitness, while their superiors have generally held other positions within the classified service, presumably lower police force positions, is beside the point.

■ Appellants' final claim is based on the fact that under Article V, Section 7, of the Constitution of the State of New York, "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship . . . ." Accordingly they argue that by virtue of Article I, Section 10, of the United States Constitution, appellees unconstitutionally threaten to impair their pension rights since any demotion accompanied by a decrease in salary will result in a comparable decrease in their pensions. But the contract clause does not prohibit states from modifying contracts within reason. As the Supreme Court stated in *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413, 427 (1934):

> Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.

*See also City of El Paso v. Simmons,* 379 U.S. 497, 515, 85 S.Ct. 577, 587, 13 L.Ed.2d 446, 458 (1965); *Lyon v. Flournoy,* 271 Cal. App.2d 774, 76 Cal.Rptr. 869 (1969), *appeal dismissed for want of substantial federal question,* 396 U.S. 274, 90 S.Ct. 564, 24 L.Ed.2d 465 (1970) (per curiam) (public employee pensions may be changed). Obviously a salary fixed by a municipal body is a benefit that can be either diminished or increased, and pensions granted in connection therewith may vary accordingly.

■ Appellants' reliance on *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (loyalty oath for public employees based only on membership unconstitutional), and *Slochower v. Board of Higher Education of New York City,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (summary dismissal of city employees invoking privilege against self-incrimination unconstitutional), is misplaced. While those cases do hold that public employees are protected from exclusion from employment pursuant to a statute that is patently arbitrary or discriminatory, 344 U.S. at 192, 73 S.Ct. at 219, 97 L.Ed. at 222, 350 U.S. at 556, 76 S.Ct. at 640, 100 L.Ed. 699, we have found that Sections 80 and 85(7) are neither. Furthermore, *Arnett v. Kennedy, supra,* 416 U.S. at 152, 94 S.Ct. at 1643, 40 L.Ed.2d at 32 (employee may be dismissed for cause pursuant to statutorily created procedure), and *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 560 (1972) (state university may without cause refuse to rehire nontenured teacher), establish that property interests in employment are creat-

---

**8.** The complaint states that 33 percent of the appellant sergeants are black or members of a minority as are 31 percent of all New York City employees. These figures, standing in the abstract as they do, hardly substantiate appellants' equal protection claim.

ed and defined by the statutory or contractual terms thereof. Appellants' property rights in employment with the Transit Authority are therefore defined by the New York Civil Service Law and the rules and regulations pursuant to which appellants were appointed. The state's right to demote for economic reasons as specified in Section 80 of the New York Civil Service Law has been clearly established under New York case law for many years. *See People ex rel. Davison v. Williams,* 213 N.Y. 130, 107 N.E. 49 (1914) (Cardozo, J.); *Felder v. Fullen,* 27 N.Y.S.2d 699 (Sup.Ct.1941), aff'd, 263 App.Div. 986, 34 N.Y.S.2d 396, aff'd, 289 N.Y. 658, 45 N.E.2d 167 (1942). Thus, once it becomes necessary, as is here threatened, to demote public employees for reasons of economy, those employees can have no legitimate expectancy or claim of entitlement that seniority be determined in one specific way or another, whether it be by tenure in the specific position as it was before 1972, note 1 *supra,* or by tenure in the classified service generally as it is now, *id.,* or by tenure in the particular department as it could be. Changing the method of determining seniority during the term of the contract is clearly within the state's "essential attributes of sovereign power" which in turn is read into all contracts. *Home Building & Loan Association, supra.*

■ To the extent that any claims on the basis of state law remain open, despite the decision of the New York State Supreme Court in proceedings brought by appellants after the district court dismissed this complaint, note 4 *supra,* we believe that the ruling of Justice Rubin therein correctly and properly states what would be the determination of the New York Court of Appeals were the questions presented to it,

and therefore see no need for further comment upon them.[9]

Judgment affirmed.

---

**9.** Claims of denial of substantive due process and equal protection as to 209 detectives appointed under N.Y. Public Authorities Law § 1204(16) (McKinney 1970) who receive compensation over and above that to which they are entitled by virtue of competitive examination have been made in appellants' complaint and brief. These claims cannot be sustained in light of the fact that § 1204(16) specifically permits salary increases for offi- cers assigned to detective division above the grade established for the officer's rank in the uniformed force. We cannot say that this provision or the discretionary power of the Transit Authority to detail officers to serve in the detective division without regard to merit and fitness examinations violates either the Constitution of the United States or the Constitution of the State of New York.