PUBLIC EMPLOYEES' RETIREMENT BOARD OF THE STATE OF NEVADA; LEGISLATIVE COMMISSION OF THE STATE OF NEVADA, APPELLANTS, v. WASHOE COUNTY, NEVADA, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; WASHOE COUNTY EMPLOYEES, RESPONDENTS.

No. 11719

September 5, 1980                    615 P.2d 972

*Robert R. Barengo,* Reno, and *Frank W. Daykin,* Legislative Counsel, Carson City, for Appellants.

*Calvin R. X. Dunlap,* District Attorney, *Chauncey Griswold,* Chief Civil Deputy District Attorney, and *David Kladney,* Reno, for Respondents.

[6]The Chief Justice designated THE HON. DAVID ZENOFF, Senior Justice, to sit in the place of THE HON. E. M. GUNDERSON, Justice. Nev. Const. art. 6, § 19; SCR 10.

**OPINION**

By the Court, BATJER, J.:

In 1947, a public employees' retirement system (PERS) was established. Chapter 286. Police officers and firemen are eligible to retire earlier than other public employees, NRS

286.510,[1] and, since 1971, their rate of contribution has been 0.5 percent higher than that of other members of the system. NRS 286.410(3), NRS 286.450(2).

Before 1975, "police officer" was not defined.[2] However, all of the employee-respondents were treated as eligible for early retirement by the PERB, and all employees made the requisite additional 0.5 percent contribution. In 1975, "police officer" was defined to include members of the University of Nevada police department and special investigators employed by the attorney general and by the district attorneys. 1975 Nev. Stats. ch. 575 § 8, at 1028. At least until 1977, the PERB continued to include PSC inspectors, parole counselors, and juvenile probation officers under the early retirement provision, presumably pursuant to its power to stipulate employee positions in the enumerated categories whose holders would be deemed "police officers". NRS 286.061(2).[3]

In 1977, the Legislature removed the investigators *and university police from the* definition of police officer, effective July 1, 1977.[4] 1977 Nev. Stats. ch. 594 § 11 at 1575. At that point, Washoe County and its affected employees sought injunctive and declaratory relief. They argued that the 1977 amendments were unconstitutional to the extent they purported to remove existing employees from the early retirement provisions. The PERB and the commission, as intervenor,[5] argued that unless

---

[1]NRS 286.510:

1. Except as provided in subsection 2, a member of the system is eligible to retire at age 60 if he has at least 10 years of service, and at age 55 if he has at least 30 years of service.

2. A police officer or fireman is eligible to retire at age 55 if he has at least 10 years of service, and at age 50 if he has at least 20 years of service.

[2]"Peace officer" was defined in 1967, NRS 169.125, to include inspectors employed by the public service commission, parole and probation officers, district attorney and attorney general special investigators, and members of the University of Nevada police department. The employee-respondents in this case are employed in those job categories. The 1971 act referred to "peace" officers in NRS 286.450 and "police" officers in NRS 286.410 in adding the 0.5 percent contribution.

[3]NRS 286.061(2):

The board may, subject to statutory limitations, adopt regulations stipulating employee positions in these categories whose holders shall be deemed "police officers". *Service in any position not enumerated in this section does not entitle a member to early retirement as a police officer.* (Emphasized portion was added in 1977.)

[4]Parole and probation officers of the department of parole and probation were eliminated from the definition of police officer effective July 1, 1979. 1977 Nev. Stats. ch. 594 § 11.5 at 1576; § 57 at 1603.

[5]NRS 218.697(1):

When deemed necessary or advisable to protect the official interests of the legislature or one or more legislative committees, the legislative commission

and until an employee acquires a vested right to the benefit of the PERS by completing 10 years of creditable service, he or she has no protectible interest in early retirement. NRS 286.6793.

Both parties moved for summary judgment. After a hearing, the district judge rendered a declaratory judgment in favor of respondents. He concluded that the 1977 amendments could operate only prospectively, to those employees hired after the effective date of the amendments. We affirm.

No state may pass a law impairing the obligation of contracts. U.S. Const., Art. 1 § 10; Nev. Const. art. 1, § 15. Public employment contracts are within the ambit of the contract clause. Singer, v. City of Topeka, 607 P.2d 467 (Kan. 1980).

Appellants argue that before the vesting of an employee's right to receive pension benefits or retire early, the Legislature may modify the terms and conditions of receiving such benefits without impairing any contractual obligations. Historically, pension benefits were treated as gratuities subject to alteration, amendment, and repeal without any constitutional ramifications. *See e.g.,* Dodge v. Board of Education, 302 U.S. 74 (1937). The modern and better-reasoned view recognizes that employees accept their positions, perform their duties, and contribute to the retirement fund in reliance upon the governmental employer's promise to pay retirement benefits and permit early retirement if certain conditions are met. By rendering services and making contributions, an employee acquires a limited vested right to pension benefits which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member.[6] Brazelton v. Kansas Public Emp. Retirement System, 607 P.2d 510 (Kan. 1980); *Singer,* 607 P.2d at 473; Betts v. Bd. of Admin. of Pub. Emp. Ret. System, 582 P.2d 614 (Cal. 1978); Taylor v. Multnomah Cty. Deputy Sher. Retire. Bd., 510 P.2d 339 (Ore. 1973); Weaver v. Evans, 495 P.2d 639 (Wash. 1972); Hanson v. City of (Idaho Falls, 446 P.2d 634 Idaho 1968); Yeazell v.

may direct the legislative counsel and his staff to appear in, commence, prosecute, defend or intervene in any action, suit, matter, cause or proceeding in any court or agency of this state or of the United States.

[6]The limited vesting theory promotes the state policy and purpose underlying the PERS because it assures employees that their reasonable expectations will be fulfilled by serving the requisite number of years, and that the legislature cannot act to their disadvantage without introducing a commensurate advantage. See NRS 286.015(1)(c).

Copins, 402 P.2d 541 (Ariz. 1965) (no change without employee's consent). *See generally,* 3 McQuillan, Municipal Corporations, § 12.144, at 609; 52 ALR2d 437 at 442.

The limited vesting theory is premised on the principle that a pension is an element of compensation and thus part of the employment contract. *Betts,* 582 P.2d at 617. A pension right may not be destroyed without impairing the contractual obligation of the public employer. However, prior to absolute vesting, pension rights are subject to reasonable modification in order to keep the system flexible to meet changing conditions, and to maintain the actuarial soundness of the system. *Id.; Brazelton,* 607 P.2d at 518; Allen v. City of Long Beach, 287 P.2d 765 (Cal. 1955). To be sustained as reasonable, the modification must bear some material relationship to the purpose of the pension system and its successful operation; and any disadvantage to employees must be accompanied by comparable new advantages. *Singer,* 607 P.2d at 475–476.

In this case, the employee-respondents were deprived of the right to become eligible for early retirement. The district court, applying the limited vesting theory, concluded that the legislature acted unreasonably and unnecessarily, because there was no evidence that the change was essential to maintain the system's integrity or flexibility. *See Singer,* 607 P.2d at 476; Glaeser v. City of Berkeley, 307 P.2d 61 (Cal.App. 1957). *But cf.* Eisenberger v. Police Pension Com'n of Harrisburg, 162 A.2d 347 (Pa. 1960) (court *assumed* an increase in retirement age enhanced actuarial soundness). In addition, the fact that the affected employees would no longer be required to pay the extra 0.5 percent is not comparable to the disadvantage of a postponed retirement.

Having concluded that retroactive application of the 1977 amendments is unreasonable, we turn to the question of who should be included in the class of people eligible for early retirement. As noted above, all employee-respondents either were within the definition of police officer before 1977, or were granted that status by the PERB. 1975 Nev. Stats. ch. 575 at 1028. An administrative construction that is within the language of the statute will not be readily disturbed by the courts. Oliver v. Spitz, 76 Nev. 5, 348 P.2d 158 (1960). Here, the PERB's inclusion of non-enumerated positions in the early retirement provision, prior to 1977, was within the PERB's

delegated power to stipulate employee positions, within general categories, whose holders are deemed police officers.[7] Consequently, employee-respondents, and those public employees similarly situated, who were hired before the effective dates of the 1977 amendments, will be eligible for early retirement if they continue to contribute the additional 0.5 percent and complete the requisite number of years of creditable service.

The judgment is affirmed.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.