DONALD R. MELLO and BARBARA JANE MELLO, Appellants, v. JOYCE L. WOODHOUSE, STEVE COZINE, JOHN A. CASERTA, JULIUS CONIGLIARO, and O. C. LEE as Members of the Public Employees Retirement Board of the State of Nevada; WILL KEATING, as the Executive Officer of the Public Employees Retirement Board of the State of Nevada, and LEGISLATOR'S RETIREMENT SYSTEM, Respondents.

No. 24028

April 6, 1994 872 P.2d 337

*Beasley, Holden & Brooks,* Reno, for Appellants.

*Frankie Sue Del Papa,* Attorney General, and *Dana K. Sammons* and *Mark P. Ghan,* Deputy Attorneys General, Carson City, for Respondents.

## OPINION

*Per Curiam:*

Appellant Donald R. Mello (Mello) served as a member of the Nevada Legislature for nearly twenty-seven years. During the 1989 legislative session, Mello was instrumental in the passage of a law which quadrupled the pension benefit for legislators. Mello resigned as a state legislator about three months later with his retirement benefits based upon the newly enacted legislation. Public outrage against the increased pension benefit led Governor Miller to convene a special session of the Nevada Legislature that repealed the increased pension benefits. Consequently, Mello's pension benefits were drastically reduced. In response, Mello brought claims against respondents for breach of contract, injunctive and declaratory relief, constitutional violations, and incidental damages. That action challenged the repeal of the law increasing legislators' pension benefits as an unconstitutional impairment of contract. After a bench trial, the district court concluded that the Nevada Constitution prohibited the vesting of Mello's rights to the increased pension during his natural term of office and dismissed the action with prejudice.

### FACTS

Donald R. Mello was appointed by the Washoe County Commissioners in December of 1963 to fill a vacancy in the Nevada Assembly. From that date until December 31, 1982, he served continuously as a member of the Nevada Assembly. Mello was elected to the Nevada Senate on November 2, 1982, and he commenced service there on January 1, 1983. He was re-elected on November 4, 1986, and served until his retirement on September 30, 1989.

During the regular 1989 session of the Nevada Legislature, Assembly Bill 820 (AB 820) was introduced to modify provisions of the Legislators' Retirement Law (LRL), found in NRS 218.

368

AB 820 provided a change in the LRL from a flat retirement calculation of $25.00 per month per year of service, to a scheme based upon a formula using the salary of a legislator as the basis for the calculation of the pension benefit.[1] 1989 Nev. Stat., ch. 481, §§ 11-15 at 1023; *compare* NRS 218.23831; 218.23835; 218.2387; 218.2388; 218.239. In addition, AB 820 provided that a legislator could retire at any age if he had accumulated thirty years of service credit.[2] The substantial increase in the formula was in large measure the result of Mello's personal interest, support and participation in the marshalling of votes for the passage of AB 820.

On June 23, 1989, the Nevada Senate passed AB 820 and sent the bill to Governor Miller for his approval. Governor Miller vetoed the bill, but his veto was overridden that same day by the Nevada Legislature. Consequently, AB 820 was enacted into law. 1989 Nev. Stat., ch. 481, § 1 at 1023. On September 30, 1989, Mello retired.[3] By virtue of this legislation, Mello's pension benefit was increased from $750.00 per month to nearly $3,000.00 per month.

Public outrage against the increased pension benefit for legislators resulted in Leola Armstrong, Executive Director of Common Cause, initiating a petition drive for a referendum on the repeal of

[1]Pursuant to NRS 218.210 each legislator elected on or after November 4, 1986, was entitled to receive $130.00 as compensation for each day of service. The Nevada Constitution limits legislators to 60 days compensation during a regular session and 20 days compensation during a special session of the legislature convened by the governor. Nev. Const., art. 4 § 33. Consequently, the maximum compensation allowable for a legislator is $10,400.00 for each biennial period ($130.00 × 80). Nevertheless, AB 820 set forth a formula whereby the daily compensation of a legislator was annualized ($130.00 × 260 days = $33,800.00), resulting in an inflated imaginary compensation base that was 6.5 times ($67,600.00 v. $10,400.00) greater than the actual compensation allowed by the Nevada Constitution and received by an actively serving legislator during a biennial legislative period. The annualized salary was divided by 12 to get a monthly base salary ($2,816.67). The monthly base salary was then multiplied by a factor (3.55% for each year of service in the legislature up to 30 years) to arrive at the monthly pension benefit. Consequently, a legislator with 30 years of service would receive a pension benefit of 106.5% of his inflated imaginary annualized salary ($2,816.67 × 106.5% = $2,999.75 per month). In the absence of this legislation, a legislator retiring with 30 years service would receive $750.00 per month (30 × $25.00).

[2]AB 820 also contained a provision where a legislator could buy up to five years of service credit.

[3]On the date of his retirement Mello had amassed nearly 27 years of service credit. In addition, Mello purchased several additional years of service credit for $38,447.37, thereby giving him a total of 30 years of service credit.

AB 820. On October 30, 1989, Nevada's Attorney General issued an opinion which stated that AB 820 violated the Internal Revenue Code.[4] Shortly thereafter, Governor Miller convened a special session of the legislature. On November 21, 1989, the Nevada Legislature repealed AB 820 and returned the legislators' pension benefit to the levels in effect prior to the passage of AB 820. 1989 Nev. Stat., ch. 1, § 1 at 1 (16th Special Session). On the next day, Will Keating, Executive Officer of PERS, corresponded with Mello indicating the effects of the repeal of AB 820 on Mello's pension benefit and returning the funds Mello used to purchase the additional years of service credit.[5]

On January 31, 1991, Mello filed an action against respondents for breach of contract, injunctive and declaratory relief, constitutional violations, and incidental damages. That action challenged the repeal of AB 820 as an unconstitutional impairment of contract. On June 15, 1992, a six day non-jury trial began before the district court. The district court concluded that Article 4, § 33 of the Nevada Constitution prohibits a legislator's pension from increasing during his natural term of office; and that the increase to Mello's pension benefits enacted by the Nevada Legislature (AB 820) was repealed before Mello's natural term of office expired on January 1, 1991. Consequently, Mello's contract rights were not impaired.

---

[4]The Attorney General's opinion declared that the formula enacted into law in AB 820 violates the maximum benefit limitation contained in 26 U.S.C. § 415 (Internal Revenue Code):

> The benefits payable under the new benefit formula, enacted in 1989, do not comply with provisions of the Internal Revenue Code because these retirement allowances exceed the limitations contained in 26 U.S.C. § 415 (1983). We reach this conclusion for two reasons. First, the statutory service credit percentage factor is too generous. Second, the statutory definition of "average compensation" used for computing a retirement benefit bears insufficient relationship to the "compensation" actually received by legislators, let alone the federal definitions attached to "compensation" and "average compensation" contained in applicable portions of the United States Code and Code of Federal Regulations. This situation could have been avoided had the Legislature employed a balanced approach of making more modest adjustments in their retirement plan benefits and enacting reasonable increases in their actual compensation. As it is, the rather radical adjustments made solely in the retirement plan benefit formula potentially expose the plan's trust fund and the plan's members to certain adverse income tax consequences.

Op. Nev. Att'y Gen. No. 89-15, at 106 (October 30, 1989).

[5]Because of the repeal of AB 820, Mello was not eligible to retire before age 60. At retirement Mello was 57 months shy of 60 years of age. Consequently, Mello's pension benefit was reduced .5% for every month that he retired prematurely (28.5%).

## DISCUSSION

*Whether the repeal of AB 820 impaired vested contract rights in violation of the United States and Nevada Constitutions.*

Mello contends that two vested contract rights were impaired by the repeal of AB 820:[6] the right to purchase additional years of service credit and the right to receive a pension benefit of $2,648.78.[7] Mello contends that these contract rights were valid and legally enforceable and could not be unilaterally abrogated by state legislation without violating Article 1, § 10 of the United States Constitution and Article 1, § 15 of the Nevada Constitution.[8]

Many cases have been reported that discuss the application of the Contracts Clause of the United States Constitution. *See* Trustees of Dartmouth College v. Woodward, 17 U.S. 518 (1819) (only in those contracts which the parties have a vested interest are the parties afforded protection from impairment); Koch v. Yunich, 533 F.2d 80 (2d Cir. 1976) (the Contracts Clause does not prohibit states from modifying contracts within reason); Morton v. Dardanelle Special School District, 121 F.2d 423 (8th Cir. 1941), *cert. denied*, 314 U.S. 655, *reh'g denied*, 314 U.S 713 (1941) (that which is not an enforceable contract right is not an obligation which can be impaired within the meaning of the Contracts Clause); Dunseath v. Nevada, 52 Nev. 104, 282 P. 879 (1929) (the obligation of a contract cannot properly be said to be impaired by a statute in force when the contract was made).

Article 4, § 33 of the Nevada Constitution provides:

> The members of the Legislature shall receive for their services, a compensation to be fixed by law and paid out of the public treasury, for not to exceed 60 days during any regular session of the legislature and not to exceed 20 days during any special session convened by the governor; but *no*

---

[6]Both of the asserted rights were also created by AB 820.

[7]Although Mello was entitled to a monthly pension benefit of $2,999.75 under AB 820, he opted for a reduced alternative benefit whereby his wife would receive his pension for the rest of her lifetime should Mello predecease her.

[8]Article 1, § 10 of the United States Constitution provides, in relevant part:

> No State shall . . . make any . . . Law impairing the Obligation of Contracts . . . .

Article 1, § 15 of the Nevada Constitution provides, in relevant part:

> No . . . law impairing the obligation of contracts shall ever be passed.

*increase of such compensation shall take effect during the term for which the members of either house shall have been elected. . . .*

(Emphasis added.) In ruling against Mello, the district court held that Mello had not acquired a *vested right*[9] to pension benefits during the period between June 23, 1989, when AB 820 was enacted, and November 21, 1989, when it was repealed, because Mello's term of office had not yet expired.[10] The district court recognized that pension benefits for legislators are subject to the limited vesting rule set forth in Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 615 P.2d 972 (1980).[11] The district court also recognized that this rule of vesting must take into consideration the proscription against increases to legislators' compensation during their natural term of office as set forth in Article 4, § 33 of the Nevada Constitution. We agree. Legislators are a special class of individuals. They have special rights, responsibilities, and in this case, a special limitation against the vesting of increased pension benefits during their natural term of office. Since the Nevada Legislature repealed AB 820 before the natural expiration of Mello's term of office, his increased pension benefits did not vest. Consequently, there has been no impairment of vested contract rights.[12]

---

[9]Mello cites to three California cases which hold that the right to pension benefits vests upon the *acceptance of employment*. Miller v. State, 557 P.2d 970 (Cal. 1977); Dickey v. Retirement Board, 548 P.2d 689 (Cal. 1976); In re Marriage of Brown, 544 P.2d 561 (Cal. 1976). However, these cases are easily distinguishable from the instant case. Here, Mello was elected to the Nevada Senate and not hired as an employee. Moreover, California employees do not have a constitutional restriction against increases in compensation during their employment as do Nevada's legislators.

[10]Mello was elected to his second term in the Senate on November 4, 1986. That term did not expire until January 1, 1991. Respondents concede that if the repeal of AB 820 had come after the expiration of Mello's term, that Mello's increased pension would have vested and would not have been subject to repeal.

[11]In Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 615 P.2d 972 (1980), the Nevada Legislature enacted a law that removed special investigators and university policemen from the definition of police officers thus making them ineligible for early retirement. This court held that prior to absolute vesting, pension rights are subject to reasonable modification, but that the retroactive application of the new law was unreasonable. *Id.* at 722, 615 P.2d at 974. However, unlike the instant case, the employees in *Washoe* were not subject to a constitutional proscription against the vesting of their pension benefits as are Nevada's legislators.

[12]Nonetheless, Mello contends that Article 4, § 33 of the Nevada Constitution is inapplicable to his situation because: (1) pension benefit payments are not drawn from the state treasury; and (2) increased pension benefits do not constitute increased compensation. We conclude that these contentions lack merit.

372

*Whether Mello is entitled to equitable relief based on promissory estoppel.*

Mello asks this court to ignore the constitutional restriction of Article 4, § 33 and rely on the doctrine of promissory estoppel to provide him relief. Mello contends that he relied on the State's promise of an increased pension benefit to his detriment, and because of that reliance he assumed additional debt to buy extra service credit and purchase real property. In support of this proposition, Mello cites to Nev. Pub. Emp. Ret. Bd. v. Byrne, 96 Nev. 276, 607 P.2d 1351 (1980). In *Byrne,* PERS *mistakenly overestimated* Byrne's retirement benefit. This court precluded PERS from reducing Byrne's pension benefit from the amount estimated because Byrne had detrimentally relied on the PERS estimate and incurred substantial debt. In the instant case, PERS made no such mistake. PERS estimated Mello's expected pension benefit based on the passage of the newly enacted AB 820. When AB 820 was repealed on November 21, 1989, PERS had no alternative but to change Mello's pension benefit.

After the passage of AB 820, public outrage against the increased pension benefit for legislators resulted in Leola Armstrong, Executive Director of Common Cause, initiating a petition drive for a referendum to repeal AB 820. Mello was aware that Common Cause was having considerable success in obtaining signatures.[13] In addition, on August 25, 1989, Mello contacted Will Keating, Executive Officer of PERS, to discuss what Mello could do in the event that AB 820 was repealed. Keating suggested that Mello could rely on the doctrine of detrimental reliance, and he and Mello went on to discuss the doctrine's application to the repeal of AB 820. It is clear from these events that Mello made a calculated decision to retire, with full knowledge that the repeal of AB 820 was possible. In reference to Mello's claim for promissory estoppel due to detrimental reliance, the district court concluded:

> Senator Mello was a sophisticated lawmaker who took the steps he felt necessary to take advantage of the newly passed amendments to the Legislative Retirement System. These steps constituted a calculated risk which included the act of Senator Mello's retirement. A court should not intervene in a situation where such acts were designed to take advantage

---

[13]In response to the petition drive for the repeal of AB 820, Mello directed the Legislative Counsel Bureau to investigate Armstrong's tenure as secretary to the Senate to see if there were any improprieties which could be brought to light that could discredit Common Cause's petition drive.

of an equitable principal. Calculated reliance is not detrimental reliance.

The district court was faced with two opposing theories concerning Mello's reliance on AB 820. The district court concluded that Mello concocted his reliance on AB 820 in an effort to save the increased pension benefits, and that conclusion is well supported by the record.

Moreover, it is well established that courts of equity can no more disregard statutory and constitutional requirements than can courts of law. INS v. Pangilinan, 486 U.S. 875 (1988); Hedges v. Dixon County, 15 U.S. 182, 192 (1893); *see also* Walker v. U.S. Dept. of Housing and Urban Dev., 912 F.2d 819 (5th Cir. 1990). Equity cannot change, modify or ignore the restriction of the Nevada Constitution in order to shape a remedy for Mello.

## CONCLUSION

For the reasons stated above, there has been no impairment of vested contract rights by the State of Nevada. Further, Mello is not entitled to equitable relief based on a promissory estoppel theory. Accordingly, the judgment of the district court is affirmed.

ROSE, C. J., STEFFEN and SHEARING, JJ., and BONAVENTURE, D. J.,[14] concur.

---

[14]The Honorable Joseph T. Bonaventure, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 4.

THE HONORABLE CHARLES E. SPRINGER, Justice, voluntarily recused himself from participation in the decision of this appeal.