992 P.2d 262 (2000)
David D. NICHOLAS, Appellant,
v.
The STATE of Nevada, Joyce L. Woodhouse, Steve Cozine, Albert C. Johns, Sam Palazzolo, Howard Reynolds, Marvin A. Leavitt, and O.C. Lee, Individually and as Members of the Public Employees' Retirement Board of the State of Nevada, Will Keating, as Executive Officer of the Public Employees' Retirement Board of the State of Nevada, and Legislators' Retirement System, Respondents.
Robert G. Craddock, and Louise Craddock, Appellants,
v.
The State of Nevada, O.C. Lee, Joyce L. Woodhouse, Steve Cozine, Dr. Albert Johns, Howard Reynolds, Marvin A. Leavitt, Sam Palazzolo, Individually and as Members of the Public Employees' Retirement Board of the State of Nevada, and Legislators' Retirement System, Respondents.
Nos. 27667, 28148.
Supreme Court of Nevada.
January 27, 2000.
*263 Bowman & Robinson, Reno, for Appellant Nicholas.
Markoff & Boyers, Las Vegas, for Appellants Craddock.
Frankie Sue Del Papa, Attorney General, Robert Auer, Deputy Attorney General, Carson City, for Respondents.
BEFORE THE COURT EN BANC.

OPINION
LEAVITT, J.
These two cases have been consolidated on appeal. NRAP 3(b). Both appellants are former members of the Nevada Legislature who claim that they are entitled to certain retirement benefits pursuant to Assembly Bill 820 (hereinafter "A.B. 820") passed by the 1989 session of the Nevada Legislature, which modified provisions of the Legislators' Retirement Law stated in NRS chapter 218. See 1989 Nev.Stat. ch. 481. A.B. 820 quadrupled the amount of benefits a retired legislator may receive.
Former Governor Miller vetoed A.B. 820, but his veto was overridden the same day by the legislature. The public expressed outrage over the legislators increasing their own retirement benefits, but former Governor Miller announced he would not call a special session to repeal the law. However, the public clamor increased, and the former Governor called a special session of the legislature for the sole purpose of repealing A.B. 820. The legislature convened and repealed the law.
A.B. 820 was the law of Nevada for approximately five months, from June 23, 1989, the date the legislature overrode the Governor's veto, to November 21, 1989, when the law was repealed. Both appellants retired during this period of time and received the increased retirement benefits until A.B. 820 was repealed. After A.B. 820 was repealed, the Public Employees' Retirement Board notified appellants that their pension benefits would be reduced.
Appellants filed actions, claiming a vested right to the increased benefits of A.B. 820. They asserted that the repeal of A.B. 820 violated the Contracts Clause of the United States Constitution by denying them protection from impairment of contract. After motions and cross-motions for summary judgment were filed, the district court in both cases granted summary judgment for respondents.
We have previously examined the ramifications of A.B. 820. We held that Article 4, Section 33 of the Nevada Constitution forbids any increase in compensation for members of the legislature during their natural term of office. A.B. 820 was repealed prior to the expiration of a sitting legislator's term of office. Therefore, any increased pension benefits did not vest and there was no impairment of any vested contract rights. See Mello v. Woodhouse, 110 Nev. 366, 872 P.2d 337 (1994).
The facts in this case are different. Both appellants are former members of the Nevada Assembly. David D. Nicholas served four terms (eight years) in the Nevada Assembly, *264 from January 1981 through December 1988. He declined to run for re-election in 1988. Robert G. Craddock served eight terms (sixteen years) from January 1, 1973, through December 1988. He was defeated in his bid for re-election in 1988. Therefore, neither appellant was a sitting member of the legislature when A.B. 820 was enacted.
Nicholas requested an application for retirement and submitted it to the Public Employees' Retirement Board on September 15, 1989. At the time of submittal, A.B. 820 was still the law in Nevada. Pursuant to the formula, he received $1,147.94 per month for two months, September and October 1989. Thereafter, his retirement benefit was reduced to $284.67 per month, the pre-A.B. 820 rate.
Robert G. Craddock's effective retirement date was November 1, 1989. His first check was a pro rata amount based on A.B. 820. His monthly benefit was $1,344.63 under the new law. After the repeal of A.B. 820, his benefit dropped to $325.65 per month.

DISCUSSION
The standard of review of an appeal from a summary judgment is de novo. See Maine v. Stewart, 109 Nev. 721, 726, 857 P.2d 755, 758 (1993); Walker v. American Bankers Ins., 108 Nev. 533, 536, 836 P.2d 59, 61 (1992). Additionally, "[q]uestions of law are reviewed de novo." SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993). There is no dispute concerning the facts in this case.
We have previously recognized that the vesting of pension benefits can either be limited or absolute.
Appellants argue that before the vesting of an employee's right to receive pension benefits or retire early, the Legislature may modify the terms and conditions of receiving such benefits without impairing any contractual obligations. Historically, pension benefits were treated as gratuities subject to alteration, amendment, and repeal without any constitutional ramifications. The modern and better-reasoned view recognizes that employees accept their positions, perform their duties, and contribute to the retirement fund in reliance upon the governmental employer's promise to pay retirement benefits and permit early retirement if certain conditions are met. By rendering services and making contributions, an employee acquires a limited vested right to pension benefits which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member.
The limited vesting theory is premised on the principle that a pension is an element of compensation and thus part of the employment contract. A pension right may not be destroyed without impairing the contractual obligation of the public employer. However, prior to absolute vesting, pension rights are subject to reasonable modification....

Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 721-22, 615 P.2d 972, 974 (1980) (citations omitted; footnote omitted; emphasis added).
Thus, there are limited vested rights which can be modified and absolute vested rights which cannot be modified. Other jurisdictions have so ruled. See Pasadena Pol. Off. Ass'n v. City of Pasadena, 147 Cal.App.3d 695, 195 Cal.Rptr. 339 (1983); La. State Troopers v. La. State Police, Etc., 417 So.2d 440 (La.Ct.App.1982); Campbell v. Michigan Judges Retirement Board, 378 Mich. 169, 143 N.W.2d 755 (1966).
The difference between limited and absolute vested rights centers around the time when the retirement benefits have been fully earned or the date of retirement, that is, when the benefits are paid.
Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived; it has ripened into a full contractual obligation.
Police Pension and Relief Board of Denver v. McPhail, 139 Colo. 330, 338 P.2d 694, 700 (1959) (quoting Retirement Board of Allegheny County v. McGovern, 316 Pa. 161, 174 A. 400 (1934)). Respondent Public Employees' *265 Retirement Board asserts that the legislature has the authority to alter a person's retirement benefit at any time, even after they retire. This is in direct contradiction to the position previously taken by the Board in Mello v. Woodhouse, 110 Nev. 366, 371, n. 10, 872 P.2d 337, 340 (1994). In Mello the Board acknowledged that legislators who had already completed their term prior to the repeal of A.B. 820 would have absolutely vested under A.B. 820. An employee's rights become absolutely vested when he retires and all conditions for his retirement benefits have been met. That right is constitutionally protected against impairment once absolutely vested. "No state may pass a law impairing the obligation of contracts. U.S. Const. art. I, § 10; Nev. Const. art. 1, § 15. Public employment contracts are within the ambit of the contract clause." Public Emp.Ret., 96 Nev. at 721, 615 P.2d at 974 (citing Singer v. City of Topeka, 227 Kan. 356, 607 P.2d 467 (1980)).
Public employees perform their duties, in reliance on the state paying retirement benefits when certain conditions are met. When those rights become absolutely vested, a contract exists between the employee and the state which cannot be modified by unilateral action on the part of the legislature. The repeal of A.B. 820 impaired the obligation of the state to pay the increased pension benefits to these appellants.
Adopting a rule that would allow the legislature to alter pension benefits after they have absolutely vested simply to bar these appellants from taking advantage of the short window of opportunity when A.B. 820 was the law would undermine the validity of contractual benefits for all public employees. We are unwilling to create a precedent that would impair thousands of employees' rights solely to prevent a few individuals from collecting greater benefits as a result of the passage of A.B. 820.
Accordingly, we reverse the district courts' summary judgments and remand to the district courts to grant summary judgment in favor of appellants, and to order respondent Public Employees' Retirement Board to reinstate the retirement benefits of appellants to the amounts allowed under A.B. 820, retroactive to the date of the repeal of A.B. 820.[1]
ROSE, C.J., SHEARING and BECKER, JJ., concur.
YOUNG, J., dissenting.
The issue is whether Nicholas and Craddock obtained vested rights to a 300 percent increase in monthly retirement benefits. I conclude that the district courts correctly determined that Nicholas and Craddock did not obtain vested rights to the unearned increase. Therefore, the legislature was free to repeal A.B. 820. Accordingly, I dissent.
Fundamentally, retirement benefits are deferred compensation for services rendered. See Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 721-22, 615 P.2d 972, 974 (1980); see also City of Las Vegas v. Ackerman, 85 Nev. 493, 501, 457 P.2d 525, 530-31 (1969) (" `[a] pension paid a governmental employee ... is a deferred portion of the compensation earned for services rendered' ") (quoting Great American Insurance Company v. Johnson, 257 N.C. 367, 126 S.E.2d 92, 94 (1962)).
Employees must provide a service in order to receive this deferred compensation. Thus, employees obtain a vested right only to deferred compensation that accumulates during their service. An employee "whose employment terminated before enactment of a statute offering additional benefits does not exchange services for the right to the benefits." Claypool v. Wilson, 4 Cal.App.4th 646, 6 Cal.Rptr.2d 77, 86 (1992); see also Simpson v. Government Emp. Retire. Sys., 88 N.C.App. 218, 363 S.E.2d 90, 94 (1987) ("A public employee has a right to expect that the retirement rights bargained for in exchange for his loyalty and continued services ... will not be removed or diminished.") (emphasis added).
Employees do not have vested rights to additional benefits distributed after an employee's service ends. See Pasadena Pol. *266 Off. Ass'n v. City of Pasadena, 147 Cal.App.3d 695, 195 Cal.Rptr. 339, 346 (1983) ("these members had completed all their years of service and retired before any COLA benefit was enacted ... [t]hus, they had no vested contractual right, based on the contract in effect during their employment, to continuation of the COLA benefit") (emphasis in original).
The two year terms of Nicholas and Craddock ended November 9, 1988, the day after the 1988 general election. See Nev. Const. art. 4, § 3, cl. 1 (amended 1996) (the term of office for members of the Assembly "shall be two years from the day next after their election"). A.B. 820 became effective June 23, 1989, over seven months later. Nicholas and Craddock filed retirement paperwork with the Public Employees' Retirement Board after A.B. 820 became effective. The majority ignores the fundamental principle that retirement benefits must be earned, not scattered by legislative whom among the undeserving. A.B. 820 bestowed upon Nicholas and Craddock gratuitous compensation. The majority enhances this error by disregarding the fact that Nicholas and Craddock failed to provide service as legislators in exchange for this additional "compensation." District Court Judge Deborah A. Agosti[1] said in the trial court that Nicholas' right "did not somehow magically `re-vest' when the legislation was enacted, for there was no exchange of services for benefits at that time." While the legislature had the power to augment benefits, it also had the power to take these unearned benefits away as it did by repealing A.B. 820. In other words, what the legislature gave, the legislature could take away.
"The state legislature is within its authority to enact legislation and to amend or repeal its statutory law unless the legislative action is specifically precluded by constitutional limitations." County of Clark v. Buckwalter, 115 Nev. ___, 974 P.2d 1162, 1167 (1999) (Maupin, J., concurring). As the majority points out, the Contract Clause of the Nevada and United States Constitutions only "constitutionally protect[s] against impairment once absolutely vested." See U.S. Const. art. I, § 10; Nev. Const. art. 1, § 15. Therefore, I agree with the majority to the extent that vested contract rights are constitutionally protected. However, the Contract Clause is inapplicable in this case because Nicholas and Craddock did not obtain vested contract rights to the additional benefits provided by A.B. 820. Nicholas' and Craddock's contract rights vested before A.B. 820, not after its passage. Consequently, I conclude that Nicholas' and Craddock's vested rights are restricted to the pre-A.B. 820 retirement benefit rates.
Additionally, it is important to note that Nicholas and Craddock made a calculated effort to exploit the passage of A.B. 820. At the time the legislature enacted A.B. 820, Nicholas was a paid lobbyist in the Nevada Legislature and actually attended hearings on A.B. 820. Nicholas also discussed the bill with State Senator Donald Mello, the moving force behind the benefit increase. Nicholas and Craddock carefully timed the filing of their retirement papers in their quest for an unwarranted windfall. Addressing Craddock's claim in the Eighth Judicial District Court, Judge Gerard Bongiovanni succinctly noted, "Calculated reliance is not detrimental reliance."
Under A.B. 820, this windfall amounts to an extra $863.27 a month for Nicholas and an extra $1,018.98 a month for Craddock for the rest of their lives. Over twenty-five years, Nicholas and Craddock would jointly receive an impressive $564,675.00 over what they would have received at the pre-A.B. 820 retirement rate.[2]
The majority fears that allowing the legislature to alter pension benefits "would undermine *267 the validity of contractual benefits for all public employees." An employee does not have a vested right to an additional retirement benefit which is granted after the employee's service has ended. Otherwise, in the unlikely event that the legislature decided to increase the retirement benefits for all state employees by 300 percent after their service to the State was over, could it be seriously argued that the legislature would not have the power to repeal such a statute?
For the foregoing reasons, I conclude that Nicholas and Craddock did not obtain vested rights to higher monthly benefits. The legislature enacted this extraordinary increase only after Nicholas and Craddock ended their legislative service. The majority's decision essentially rewards Nicholas and Craddock with undeserved compensation for which the citizens of Nevada received nothing in return. Therefore, I dissent.
MAUPIN, J., dissenting.
The legislature enacted former A.B. 820 after appellants' public service as legislators was concluded. They may not, as a matter of law, claim to have relied upon the pension increase as a condition of their respective public services.
It is reliance that gives life to the doctrine that is most eloquently articulated by the majority opinion. This completely unique situation does not implicate that doctrine. The legislature intended to void the pension increase in its entirety and appellants lost nothing in the process.
I further agree with Justice Young that no constitutional violation of appellants' vested rights occurred.
NOTES
[1] The Honorable Deborah A. Agosti, Justice, voluntarily disqualified herself from participation in the decision of these consolidated appeals.
[1] The Honorable Deborah A. Agosti, Justice, was subsequently elected to this court and voluntarily disqualified herself from participating in this matter.
[2] It warrants mentioning that the legislature itself came to the conclusion that the citizens of Nevada deserve better. Initially, the legislature enacted A.B. 820 over the governor's veto on a near unanimous vote. However, after five months of public outcry, the legislature reversed course in a special session and unanimously voted to repeal A.B. 820, thereby ending this unprecedented raid on the public treasury. As former Governor Mike O'Callaghan noted in an editorial, "Everybody in Nevada knew that the provisions of A.B. 820 were outrageous and wrong. Even the people who voted for it knew it was wrong ... [but] greed overcame common sense and the responsibility candidates promise voters." Mike O'Callaghan, Where I Stand Mike O'Callaghan: Lingering odor from `89, Las Vegas Sun, Sept. 28, 1999, at 7A.