414 Mass. 323                                                          323

Local 589, Amalgamated Transit Union *v.* Massachusetts Bay Transportation Authority.

LOCAL 589, AMALGAMATED TRANSIT UNION *vs.*
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk. November 5, 1992. - February 16, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contract*, Collective bargaining contract. *Statute*, Retroactive effect. *Labor*, Collective bargaining, Health benefit plan. *Massachusetts Bay Transportation Authority*, Collective bargaining.

The provisions of G. L. c. 161A, § 19J, effective July 1, 1991, setting forth a minimum share that each employee of the Massachusetts Bay Transportation Authority (MBTA) must contribute toward the cost of the employee's health insurance, did not override contrary provisions of the collective bargaining agreement in effect between the MBTA and its employees on the effective date of the statute. [323-329]

CIVIL ACTION commenced in the Superior Court Department on October 31, 1991.

The case was reported to the Appeals Court by *Hiller B. Zobel*, J., on a statement of agreed facts. The Supreme Judicial Court transferred the case on its own initiative.

*Douglas Taylor*, of the District of Columbia (*John McMahon* with him) for the plaintiff.

*Carol A. Buckley* (*Joseph A. Trainor & Marta Morales* with her) for the defendant.

WILKINS, J. The plaintiff (union) and the defendant authority (MBTA) disagree as to whether G. L. c. 161A, § 19J, as appearing in St. 1991, c. 138, § 199, setting forth a minimum share that each MBTA employee must contribute toward the cost of his or her health insurance, justified the MBTA's decision to deduct from the wages of members of the union a portion of their health insurance premiums, com-

mencing in December, 1991.[1] The parties' most recent collective bargaining agreement provides that, for full-time employees, the MBTA will pay the entire cost of health insurance except for the costs of dental insurance which will be shared equally.[2]

The MBTA argues that the collective bargaining agreement has terminated at least for the purposes of implementing the provisions of § 19J, and that, even if it has not terminated, § 19J overrides any contrary provision in the collective bargaining agreement and, in doing so, does not unconstitutionally impair any obligation of contract. The union argues that the health insurance coverage provisions of the collective bargaining agreement remain in effect and that § 19J does not apply to vary the terms of a continuing agreement that antedated the effectiveness of the new § 19J. We conclude that the MBTA's obligations under the terms of the collec-

---

[1]Section 19J, effective July 1, 1991 (St. 1991, c. 138, § 393), reads as follows:

> "Notwithstanding the provisions of any general or special law to the contrary, each employee in a plan for group, general or blanket hospital, medical, dental or other health insurance, either by purchase of a policy or policies from one or more insurance companies, or nonprofit hospital, medical, dental or other service corporations, including health maintenance organizations, or by means of a self-insurance plan or preferred provider arrangement plan of the authority shall contribute to the total monthly premium or rate applicable to said coverages not less than the current employee share of monthly premium or rate established pursuant to the provisions of section eight of chapter thirty-two A; provided, however, that nothing in this section shall preclude the parties to a collective bargaining agreement under this chapter which provides that such employees shall pay a percent share of such premium cost or rate which is higher than the rate established in section eight of chapter thirty-two A; provided, further, that no employee's health insurance contributions shall be reduced by this section."

The "current employee share" of the monthly premiums or the rate prescribed indirectly by G. L. c. 32A, § 8, is 10 per cent. See St. 1991, c. 138, § 2, line item 1108-5200, for fiscal year 1992; St. 1992, c. 133, § 2, line item 1108-5200, for the current fiscal year.

[2]Under the agreement the MBTA must make contributions toward individual (i.e., not family) coverage for part-time employees based on the number of hours of the employee's regularly scheduled work each week.

tive bargaining agreement concerning the payment of the cost of health insurance continue and that the legislative mandate concerning employee contributions does not apply to the agreement, which was in effect on the effective date of that mandate.

On October 11, 1991, the MBTA advised its employees that it intended to implement § 19J commencing in December, 1991, and it did so for full-time employees who were members of the union.[3] On October 31, 1991, the union commenced this action seeking a declaration of its rights and an injunction against the implementation of § 19J until a new collective bargaining agreement is established. The parties agreed to place the disputed amounts in an interest-bearing escrow account pending the entry of final judgment, and they entered into a statement of agreed facts. A judge of the Superior Court reported the case to the Appeals Court pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We transferred the case here on our own motion.

Since 1964, the parties have had a series of collective bargaining agreements governing employees within the union's collective bargaining unit. The most recent terms of the agreement were determined in 1989 by award of an interest arbitrator acting under G. L. c. 161A, §§ 19, 19C-19G, as amended through St. 1991, c. 138, §§ 197, 198. That award provided pay and benefits for the period from April 1, 1988, through March 31, 1991. In addition, the agreement con-

---

[3] It did so also for part-time union employees who work more than twenty-four hours each week and have individual coverage (for which the MBTA is obliged to pay in full pursuant to the terms of the collective bargaining agreement).

If § 19J applied to the union's members during 1991, the monthly employee contribution toward the cost of health care dictated by § 19J would be as follows:

|  | Family Coverage | Individual Coverage |
|---|---|---|
| Blue Cross | $66.65 | $27.20 |
| Health Maintenance Organizations | $40.91 - $43.68 | $15.50 - $16.09 |

During 1992, the monthly employee contribution, if § 19J applied, was approximately 10 per cent higher.

tained what has been called "rollover" language, stating that it "and the provisions hereof" shall continue in force "from year to year thereafter unless changed by the parties." Any party desiring a change in the agreement could advise the other party of its desire by giving at least 180 days' notice prior to March 31, 1991, and each subsequent March 31. On October 18, 1990, the MBTA notified the union that it desired to terminate the agreement which the MBTA said was "scheduled to expire on March 31, 1991." On the same date the union gave the MBTA a notice for contract change.[4] Although there have been numerous meetings and although statutory mediation was commenced and then suspended by agreement, the parties have not reached an agreement. It was in these circumstances that, in October, 1991, the MBTA advised the union that it had decided to implement § 19J, as amended effective July 1, 1991, by making deductions from the wages of affected union members, commencing in December, 1991. The MBTA did not attempt at the same time to apply § 19J, as amended, to its employees represented by other unions whose collective bargaining agreements had terms ending in 1992.[5]

The collective bargaining agreement states that its provisions shall continue until changed by agreement. The MBTA argues that, because an agreement without a termination date may be terminated at will on reasonable notice (see *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 524 [1957]; *Montgomery Mailers' Union No. 127* v. *Advertiser Co.*, 827 F.2d 709, 715 [11th Cir. 1987]), it terminated the agreement by its October 18, 1990, notice. That general rule of law, based in part on an implication of the parties' intentions, has no application here because the parties expressly agreed to continue the agreement's terms not just for the time reasonably necessary to negotiate a new agreement

---

[4]Neither party makes any point of the fact that the notices were not given more than 180 days before March 31, 1991. Each party apparently agreed to negotiate a new collective bargaining agreement.

[5]The MBTA gives no explanation as to why it did not seek to implement § 19J on July 1, 1991, as to the union's employees.

but rather until modified by agreement. Where a strike would be unlawful, or at least arguably so,[6] and arbitration is mandated for the ultimate resolution of disputes concerning the terms of a collective bargaining agreement (G. L. c. 161A, §§ 19, 19A, 19D, 19G), and where the public interest in uninterrupted mass transit service is great, public policy supports the enforcement of the collective bargaining agreement as written and the rejection of any implication of a right to terminate it on reasonable notice in the circumstances of this case. By its terms, the collective bargaining agreement is still in effect.

In *Local Div. 589, Amalgamated Transit Union* v. *Massachusetts*, 666 F.2d 618 (1st Cir. 1981), cert. denied, 457 U.S. 1117 (1982), the court considered the applicability of (a) an act that prescribed an interest arbitration process for future disputes between the union and the MBTA different from that contained in the collective bargaining agreement and (b) an act providing that inherent management rights shall not be a subject of future bargaining. *Id.* at 622-623. Neither of these acts purported directly to alter substantive (as opposed to procedural) rights under an existing collective bargaining agreement. *Id.* at 640. Newly-stated factors that an arbitrator must consider may have injected a new substantive element into the relationship, but that change was minor compared to an application of § 19J which reduces the take-home pay provided under the collective bargaining agreement. The court, without discussion, assumed that the acts applied to the then-current collective bargaining agreement[7] and concluded that the acts did not violate the contract clause of the United States Constitution. *Id.* at 638-643. Before reaching that conclusion, the court opined that that agreement may have terminated because of public policy considerations after a reasonable time following the expi-

---

[6]The union characterizes the right of its employees to strike as "doubtful."

[7]That collective bargaining agreement had the same rollover clause and arbitration provision as those with which we are concerned in this case.

ration of what the court called "the contract's express term." *Id.* at 638.

The agreement with which we are concerned has a term of three years and annual terms thereafter. But because no change can be made in the agreement without mutual consent, the agreement has no express term and in a sense is perpetual. It could, however, lose that quality (a) if the parties so agreed, (b) if the union is decertified, or (c) if the Legislature expressly provides otherwise in a constitutionally permissible way. No controlling public policy is violated by the "perpetual" aspect of this collective bargaining agreement covering urban mass transit workers who provide a vital service to the metropolitan Boston area that should not be interrupted.

The MBTA argues further that the rollover provision is not an enforceable obligation and is illusory because, when earlier arbitration awards have decided rights retroactively to the date of termination of prior agreements, they have always benefited the union's members with retroactive wage increases and have never made any provision retroactively detrimental to the union members. If it be assumed that, as the parties seem to agree, a future arbitrator's award or collective bargaining agreement could be applicable retroactively to April 1, 1991, or some other later date, there is no reason why a retroactive award or agreement detrimental to union members could not be made. In light of § 19J's mandate for employee contributions toward health insurance costs, effective July 1, 1991, retroactive application of § 19J might be required in a future arbitrator's award or in a future bargaining agreement, but we need not now decide the point.

There is no indication that the Legislature intended its 1991 amendment of § 19J to apply to collective bargaining agreements already agreed to and of continuing effect. A statute dealing with substantive rights operates prospectively when there is no clear legislative intent that it be retroactive. See *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 214 (1980); *Yates* v. *General Motors Acceptance Corp.*, 356 Mass. 529, 531 (1969). Be-

cause substantive contractual rights are involved, § 19J operates prospectively so as to apply only to agreements made (and to arbitration awards entered) after July 1, 1991. Paraphrasing a portion of this court's opinion in the *Yates* case, *supra*: "[Section 19J] is not procedural but affects substantive rights. The statute would impose an obligation on [union members] and confer a right on the [MBTA] which neither bargained for in their agreement, and thus substantially would alter their relationship." *Id.*[8]

Judgment shall be entered in the Superior Court declaring that the provisions of G. L. c. 161A, § 19J, as appearing in St. 1991, c. 138, § 199, do not apply to the collective bargaining agreement between the Massachusetts Bay Transportation Authority and Local 589, Amalgamated Transit Union, as most recently determined by award of an interest arbitrator on July 18, 1989. That judgment shall also provide for the distribution of funds held pursuant to the escrow account agreement, subject to such additional or different terms as the parties may agree to and to such terms as the court may direct in implementing the provisions of the escrow account agreement. We see no reason to grant injunctive relief against the MBTA because we are confident that it will comply with the law as we have defined it.

*So ordered.*

---

[8]Because of our conclusion that § 19J, as amended in 1991, does not apply to the parties' current collective bargaining agreement, we need not consider whether, if it did, it would unconstitutionally impair the obligations of the agreement. Cf. *Boston Lodge 264, Int'l Ass'n of Machinists* v. *Massachusetts Bay Transp. Auth.*, 389 Mass. 819, 822-823 (1983).