NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES &
        others[1] vs. COMMONWEALTH & others.[2]

Middlesex. November 10, 1994. - February 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Constitutional Law*, Impairment of contracts. *Commonwealth*, Collective
bargaining, Contracts, Officers and employees, Health benefit plan.
*Contract*, Collective bargaining contract. *Public Employment*, Collec-
tive bargaining. *Insurance*, Group. *General Court*.

A line item in the fiscal year 1994 General Appropriation Act that re-
duced the Commonwealth's percentage contribution to its employees'
health insurance premiums was a valid exercise by the Legislature of its
reserved power under G. L. c. 32A, § 8, which superseded the applica-
ble collective bargaining agreements' reference to a different percentage
contribution; consequently, in the context of the statutory constraints,
there was no unconstitutional impairment of the employees' contractual
rights. [452-455]


CIVIL ACTION commenced in the Superior Court Depart-
ment on September 23, 1993.

The case was heard by *Peter M. Lauriat*, J., on a state-
ment of agreed facts.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Pierce O. Cray*, Assistant Attorney General, for the Com-
monwealth & others.

*Mark Dalton* for the plaintiffs.

---

[1]Drew Reardon, Kenneth H. Knight, James Farley, Kenneth Howe,
Patricia Barbaro, John Donegan, Grace Mucci, Robert Friel, and
Kenneth T. Lyons.

[2]Secretary of the Executive Office of Administration, Comptroller of the
Commonwealth, Group Insurance Commission, Board of Regents of
Higher Education, and Higher Education Coordinating Council.

*Augustus J. Camelio & Steven A. Torres*, for American Federation of State, County & Municipal Employees, amicus curiae, submitted a brief.

*Matthew D. Jones, Katherine D. Shea, Elizabeth A. Sloane, David Rome, Ruth A. Bourquin & Augustus J. Camelio*, for Alliance, AFSCME/SEIU, AFL-CIO, amicus curiae, submitted a brief.

ABRAMS, J. Pursuant to the relevant sections of G. L. c. 32A (1992 ed.), the Commonwealth entered three three-year[3] collective bargaining agreements with the National Association of Government Employees (NAGE), which established that the Commonwealth would contribute ninety percent of employees' health insurance premiums, and that the employees would contribute the balance.[4] The plaintiffs, NAGE, several of its officials and two State employees, brought suit in Superior Court seeking a declaratory judgment invalidating, as applied to certain NAGE members, a line item in the fiscal year 1994 General Appropriation Act,[5] which reduced the percentage contribution by the Commonwealth from ninety to eighty-five per cent, and thus increased the percentage contributions of the employees from ten to fifteen per cent.[6] St. 1993, c. 110, § 2, line item 1108-5200. The plaintiffs claim that the item's increase in State employ-

---

[3]General Laws c. 150E, § 7 (*a*) (1992 ed.), provides that: "Any collective bargaining agreement . . . shall not exceed a term of three years. . . ."

[4]Article 13 of each agreement provides: "The Commonwealth shall pay ninety (90) percent of the monthly premium rate for the Group Health Insurance Plan and each employee covered shall pay ten (10) percent of this premium rate for the type of coverage that is provided for him/her and his/her dependents under the Plan."

[5]The line item provides, in relevant part: "[T]he commonwealth's share of the group insurance premium for active and retired state employees as provided in [§ 8] of said [c. 32A] and for the purposes of [§ 14] of said [c. 32A] shall be ninety percent . . . provided further, that after [July 31, 1993], the commonwealth's share of such premium for active state employees shall be eighty-five percent." St. 1993, c. 110, § 2, line item 1108-5200.

[6]The Commonwealth's contribution for retired State employees remained at ninety per cent and is not at issue here.

ees' insurance premium contributions impaired the covered employees' rights under the collective bargaining agreements and therefore violated the contract clause of the United States Constitution.

After a hearing, the Superior Court judge issued a memorandum of decision and order of judgment on April 12, 1994. The judge declared that "the provision in the Commonwealth's 1994 fiscal year budget increasing the health insurance premiums from ten per cent to fifteen percent for those employees covered by the three NAGE/Commonwealth collective bargaining agreements is unconstitutional as an impairment of the obligation of contract, and therefore null and void." The judge entered a declaration to that effect. The Commonwealth appealed. We granted the Commonwealth's application for direct appellate review. We declare that the line item which reduced the Commonwealth's contribution to eighty-five per cent does not conflict with the collective bargaining agreements and therefore does not violate the contract clause.

I. *Contract clause.* The contract clause provides that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . . ." For a violation of the contract clause, there must be a "change in law [that] impairs [a] contractual relationship" and that impairment must be substantial. *General Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992) (contract clause "inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial"). See *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411 (1983), quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244 (1978) ("threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship' "). We turn to the agreements and the relevant statutory provisions.

II. *The contracts.* The parties do not dispute that the agreements are still in effect. Although each of the agreements' three-year periods lapsed in 1993, under open-ended

duration clauses,[7] the agreements are extended until the execution of successor agreements. No successor agreements have been executed.

Although the Commonwealth's contribution to State employees' health insurance premiums is a mandatory subject of collective bargaining, see G. L. c. 150E, § 6 (1992 ed.); *Anderson* v. *Selectmen of Wrentham*, 406 Mass. 508, 511 (1990), under G. L. c. 32A, § 8 (1992 ed.), the Commonwealth's contribution must be no less than seventy-five per cent of the premiums for group health insurance, and the Commonwealth may pay a percentage greater than the statutory minimum, "upon approval by way of an annual, or more frequent appropriation act."[8] Section 8 further provides that "[e]ach appropriation act as may be applicable . . . shall describe the ratio of contribution to be paid by the commonwealth and by the . . . employees." *Id.* In other words, the ratio agreed to in collective bargaining is not effective unless it is incorporated by the Legislature in an appropriation act. Once effective, the Commonwealth's percentage contribution "shall continue until changed by a subsequent appropriation act." *Id.*[9]

---

[7]Each agreement contains a clause which states: "This agreement shall be for the three year period from July 1, 1990, to June 30, 1993 . . . . Should a successor Agreement not be executed by July 1, 1993, this Agreement shall remain in full force and effect until a successor Agreement is executed. . . ."

[8]General Laws c. 32A, § 14 (1992 ed.), requires the Commonwealth to make the same percentage contribution for employees covered by health care organizations, commonly known as HMOs, as for those covered by group health insurance.

[9]Section 8 provides in relevant part: "[T]he commonwealth, on behalf of active and retired employees and their dependents, shall contribute no less than seventy-five per cent of the total monthly premium or rate applicable to said coverages and the active and retired employees on behalf of themselves or themselves and their dependents shall contribute the remaining twenty-five per cent of the total monthly premium or rate, except, that upon approval by way of annual, or more frequent appropriation act, the commonwealth may contribute more than seventy-five per cent but less than the entire total monthly premium or rate. Each appropriation act as may be applicable, shall provide the necessary sum based upon the estimated monthly cost as required by [§ 4] and shall describe the ratio of

The employees are responsible for the balance of the insurance premiums. Their contributions are withheld from their salaries at a rate of "no more than twenty-five per cent of the . . . total monthly premium or rate, or . . . a lesser amount as provided in the most recent applicable appropriation act." *Id.*

The percentage contributions of the Commonwealth and its employees have varied over the years, as directed by periodic appropriation acts.[10] The agreements at issue set the Commonwealth's percentage contribution within the bounds of the relevant statutory provisions. The essence of the plaintiffs' claim is that the Commonwealth bound itself to a statutorily permissible ninety per cent contribution under the three collective bargaining agreements at issue, and that under the contract clause this agreement could not constitutionally be altered by the Legislature. Reading the contracts in the context of their statutory constraints, we do not agree.

III. *Alleged impairment of rights under the contracts.* Collective bargaining agreements of the sort at issue are mandated and governed by G. L. c. 150E (1992 ed.). General Laws c. 150E, § 7 (*d*), lists those statutes that are subordinated to collective bargaining agreements. General Laws c. 32A, § 8, is not among them. "[S]tatutes not specifically enumerated in § 7 (*d*) will prevail over contrary terms in collective bargaining agreements." *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124, 126 (1989). Accord *Bur-*

---

contribution to be paid by the commonwealth and by the active and retired employees insured under the aforesaid sections. . . . The aforesaid ratio shall continue until changed by a subsequent appropriation act." G. L. c. 32A, § 8 (1992 ed.).

[10]In their statement of agreed facts, the parties have stipulated that in the mid-1970's the Commonwealth contributed the statutory minimum of seventy-five per cent. In June, 1977, the Legislature increased the Commonwealth's share to eighty percent retroactively to January 1, 1977, but only for the six-month period ending on June 30, 1977. One year later, the Legislature increased the Commonwealth's share to eighty per cent retroactive to July 1, 1977; to eighty-five per cent retroactive to January 1, 1978; and to ninety per cent effective January 1, 1979. Subsequent appropriation acts maintained the Commonwealth's ninety per cent contribution ratio until fiscal year 1994, the year at issue.

*lington* v. *Labor Relations Comm'n*, 390 Mass. 157, 163 (1983).

Under the provision in § 8 which provides that the Commonwealth's contribution shall be effected by an appropriation act, see *supra*, the Legislature reserved for itself the power to change the percentage of the Commonwealth's agreed-to contributions. This reserved power of the Legislature cannot be overridden by collective bargaining. See *Cambridge* v. *Attorney Gen.*, 410 Mass. 165, 173 (1991) ("[m]unicipal employers and employees may not negotiate to avoid complying with laws of general applicability . . ."); *Anderson, supra* at 511, 513-514; *School Comm. of Medford* v. *Labor Relations Comm'n*, 380 Mass. 932 (1980). See also *Energy Reserves Group, Inc., supra* at 411, quoting *Hudson Water Co.* v. *McCarter*, 209 U.S. 349, 357 (1908) ("One whose rights . . . are subject to state restriction, cannot remove them from the power of the State by making a contract about them"). The collective bargaining agreements at issue were executed subject not only to the percentage limitations of § 8, but also to the reserved power of the Legislature to reduce the percentage of the Commonwealth's contribution in appropriation acts.[11] See *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 784 n.9 (1975) (contractual rights in pension benefits made subject to reserved power of Legislature to alter terms of office).

---

[11]Our decision in *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197 (1982), cited by both the Superior Court judge and the plaintiffs, is not applicable. In that case we said that, "an appropriation funding the first year of [a] contract constitutes an approval by the legislative body of the entire agreement." *Id.* at 204 (three-year municipal collective bargaining agreement). The issue before us is whether a contractual obligation existed for the Commonwealth to pay ninety per cent of the employees' health insurance premiums regardless of subsequent appropriation acts, and not whether the agreements were enforceable in their later years. Further, even if the *Boston Teachers Union* case were relevant, it is distinguishable because it addressed a statute listed in G. L. c. 150E as subordinated to collective bargaining agreements, *id.* at 205, and that statute did not expressly reserve the right to alter the amount of contributions, *id.* at 203-204.

The power reserved for the Legislature under § 8 to alter the ratio became an implied term that was incorporated into the contracts. "As a general rule, the law existing at the time an agreement is made necessarily enters into and becomes part of the agreement." *Feakes* v. *Bozyczko*, 373 Mass. 633, 636 (1977). Accord *Mayor of Salem* v. *Warner Amex Cable Communications Inc.*, 392 Mass 663, 666 (1984). See also *General Motors Corp.* v. *Romein*, 503 U.S. 181, 189 (1992) ("state laws are implied into private contracts . . . when those laws affect the validity, construction, and enforcement of contracts"); *United States Trust Co.* v. *New Jersey*, 431 U.S. 1, 19-20 n.17 (1977), quoting *Home Bldg. & Loan Ass'n* v. *Blaisdell*, 290 U.S. 398, 429-430 (1934) ("the laws which subsist at the time and place of the making of a contract . . . enter into and form part of it, as if they were expressly referred to or incorporated in its terms"). In negotiating the collective bargaining agreements the parties did not have the power to bind the Commonwealth to a contribution ratio which could not be altered by the Legislature. The reserved power supersedes the agreements' reference to the then-existing ninety per cent contribution ratio.[12]

---

[12]The Superior Court judge agreed that § 8 prevails over the collective bargaining agreements, but found that it "is merely a description of the appropriation process, not an essential condition of the contract." We disagree. The statute is not merely descriptive; it orders how the contribution is to be set and changed. "When a statute is clear and unambiguous, the plain meaning of the language must be given effect." *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 167 (1989). General Laws c. 32A, § 8, repeatedly provides that the Commonwealth's percentage contribution is set by appropriation acts. The plain meaning of § 8 is that the percentage of the Commonwealth's contribution to employee health insurance premiums, over the statutory minimum of seventy-five per cent, is set solely by appropriation acts. Thus, the judge's interpretation of this statute as being merely descriptive conflicts with the "common tenet of statutory construction that, wherever possible, no provision of a legislative enactment should be treated as superfluous." *Casa Loma, Inc.* v. *Alcoholic Beverage Control Comm'n*, 377 Mass. 231, 234 (1979). In an amicus brief, The Alliance, AFSCME/SEIU, AFL-CIO argues that the judge's interpretation does not render the appropriation provisions superfluous because the provisions remain applicable to all State employees not subject to collective bargaining agreements. The text of the statute does not support such a reading. The statute does not distinguish between em-

IV. *Conclusion.* The challenged line item was a valid exercise by the Legislature of its reserved power. General Laws c. 32A, § 8, existed at the time the agreements were made; the agreements incorporate its mandate that the appropriation process determines the percentage of the Commonwealth's contribution.[18] Because the agreements themselves necessarily contemplated changes in premium contributions through subsequent appropriation acts, there was no conflict between the line item and the collective bargaining agreements. Thus, there was no impairment of NAGE's contractual rights and therefore no violation of the contract clause.

The judgment of the Superior Court is vacated and the case remanded for entry of a declaration that St. 1993, c. 110, § 2, line item 1108-5200 does not violate the contract clause of the United States Constitution.

*So ordered.*

---

ployees who have collective bargaining agreements and those who do not. Compare G. L. c. 32B, § 16 (1992 ed.) (providing that collective bargaining agreements can set HMO contribution percentages for certain employees of counties, cities, towns, and districts and their dependents).

[18]This case is distinguished from *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 414 Mass. 323 (1993). In that case, the statute that raised the employees' contribution to their health insurance premiums was enacted after the collective bargaining agreement was executed. *Id.* at 324-325. We said that the statute did not apply retroactively to alter the existing agreement. *Id.* at 329. In the present case, the statute, G. L. c. 32A, § 8, was in force at the time the agreements were negotiated.