Garsh, J.
This motion tests the outer limits of M.R.Civ.P. 60(b)(6). The defendants (collectively, the “Commonwealth”) seek relief under Rule 60(b)(6) from a judgment confirming an arbitrator’s award in favor of the Massachusetts Correction Officers Federated Union (“Union”). For the reasons stated below, the Commonwealth’s Motion for Relief from Judgment is DENIED.
BACKGROUND
The Union and the Commonwealth are parties to a collective bargaining agreement (“Agreement”), effective from January 1,1992, through December 31,1994, that includes a provision for binding arbitration of grievances arising under the Agreement. The Agreement provides for the Commonwealth to contribute nineiy percent of employees’ monthly group health insurance premiums. On May 11, 1994, the parties submitted to arbitration a dispute regarding whether the Commonwealth had violated the terms of the Agreement by unilaterally reducing, in September 1993, its monthly contribution from ninety percent to eighty-five percent[2] and, if so, the remedy. The arbitrator rejected the Commonwealth’s external law defense and found that the Commonwealth had violated the Agreement. On July 14, 1994, the Arbitrator’s award issued; it ordered the Commonwealth to refund the five percent improperly withheld and to pay ninety percent of the group health insurance premiums. The Commonwealth refused to comply. It did not, however, file an application, pursuant to G.L.c. 150C, §11(b), to vacate the award.[3]
Pursuant to G.L.c. 150C, §10,[4] on September 29, 1994, more than two months after the arbitrator’s award, the Union commenced this action seeking confirmation of the award. The Commonwealth filed an answer to the complaint in which it contended that the “arbitrator lacked jurisdiction or authority to make his award.”
The Commonwealth also requested a stay of this action pending the Supreme Judicial Court’s resolution of National Association of Government Employees v. Commonwealth, Suffolk County Civil Action No. 93-5509 (April 12, 1994) (“NAGEP) [trial court opinion reported at 2 Mass. L. Rptr. 21], in which similar language in a collective bargaining agreement had been construed favorably to a different union. In seeking the stay, the Commonwealth conceded that it had failed to apply to vacate the award within the period provided by G.L.c. 150C, §ll(b) and that its failure to have so applied “precludes a petition to vacate now.” Nevertheless, it contended that since it had neglected to petition due to “an inadvertent lack *534 of communication among several officers of the Executive Branch,” its failure should be excused. The Commonwealth argued that should the Supreme Judicial Court reverse NAGE I, confirmation of the award would require the Commonwealth to violate state law and would “lead to the disparate and incongruous result of the plaintiffs 4000 members alone enjoying a 90% Commonwealth contribution rate, in marked contrast to every other state employee.” The request for a stay was opposed by the Union.
Following a hearing, on November 3, 1994, this court denied the request for a stay and confirmed the arbitrator’s award, relying upon the express language of G.L.c. 150C, §10 and Local 589 v. Massachusetts Bay Transportation Authority, 397 Mass. 426 (1986), in which the Court held that “to ensure the stability and finality of the arbitration process, we hold that all challenges to an arbitrator’s award must be brought within the time frame specified by the statute.” Id. at 431. The outcome of the NAGE I appeal was deemed irrelevant because, even assuming it were reversed, such a ruling would not alter the fact that the Commonwealth had failed to challenge the arbitrator’s award at issue in this case within the time frame required by G.L.c. 150C, §ll(b).
The Commonwealth orally requested a stay of the judgment confirming the award, but, despite the dire predictions of the disaster that would flow from confirming the award should NAGE Ibe reversed, the Commonwealth would not agree to file an immediate notice of appeal.[5] In fact, on November 4, 1994, the Commonwealth withdrew its request for a stay pending appeal, stating that the “defendants have not yet made a decision regarding whether to appeal the Court’s judgment” and that “[a] wide variety of factors enter into the appeal decision. As is our practice in cases with financial implications of this magnitude for the Commonwealth, the Attorney General’s Office will consult with appropriate individuals in both the executive and' Legislative branches prior to making a final determination.” The Commonwealth further advised that “ [a]s the defendants have not made their appeal decision, they recognize that they are not in a position to seek a stay pending appeal . . . The defendants recognize that if a decision is made to appeal, it will be necessary to move anew for a stay.” The Commonwealth had sixty days in which to appeal this court’s judgment. M.R.App.P. 4(a). The Commonwealth did not file a notice of appeal, nor did it request an extension of the time for filing a notice of appeal pursuant to M.R.App.P. 4(c).
On February 9, 1995, NAGE I was reversed. National Association of Government Employees v. Commonwealth, 419 Mass. 448, 450 (1995) (“NAGE II). The Court held that the Commonwealth’s five percent reduction of premium payments was appropriate.
Three months later, the defendants brought this motion under Rule 60(b)(6). It asks the court to relieve them from the judgment confirming the arbitrator’s award on the grounds that extraordinary circumstances exist warranting such relief.
DISCUSSION
Rule 60(b)(6) of the Massachusetts Rules of Civil Procedure authorizes a court to relieve a party from a final judgment for any reason “justifying relief from the operation of the judgment” other than one of the reasons specified in (b)(1) through (5).[6] That rule “is to litigation what mouth-to-mouth resuscitation is to first aid: a life-saving treatment, applicable in desperate cases.” Bowers v. Board of Appeals of Marshfield, 16 Mass.App.Ct. 29, 33 n.5 (1983), quoting Smith & Zobel, Rules Practice, §60.1.
Relief under Rule 60(b)(6) should be granted only upon a showing of extraordinary circumstances. That rule “does not provide an avenue for challenging supposed legal errors . . .” Bromfield v. Commonwealth, 400 Mass. 254, 257 (1987). Cf. Ackermann v. United States, 340 U.S. 193 (1950). In order to preserve the finality of decisions, the operation of Rule 60(b) has “extremely meagre scope.” Bowers, 16 Mass.App.Ct. at 33 (appropriate for a public authority to use Rule 60(b)(6) to secure relief from a consent judgment that contained a restriction it lacked the power to impose). It is not to be used as a back-door substitute for an untimely appeal. Cf. Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993).
The Commonwealth has identified no extraordinary circumstances that prevented it from filing a timely appeal from the judgment. Indeed, in its memorandum in support of its Rule 60(b)(6) motion, the Commonwealth states that “[a]fter careful consideration of the Court’s comments at the confirmation hearing, including in particular its discussion of Local 589, the Commonwealth did not appeal.” The Commonwealth may not now utilize Rule 60(b)(6) as a vehicle for obtaining relief from a judgment that could have been, but deliberately was not, contested through the appellate process. Boston Redevelopment Authority v. Charles River Park “C” Co., 402 Mass. 1004, 1005 (1988) (rescript) (defendants identified no “extraordinary circumstances warranting relief under Rule 60 (b) (6), given that they had a full and fair opportunity to contest the judgment through the ordinary appellate process”); Bromfield, 400 Mass. at 257 (“improper to grant relief under 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal”). Cf. Ackerman, 340 U.S. at 198 (“free, calculated, deliberate choices are not to be relieved from” under parallel federal rule).
Moreover, nothing of any legal significance has occurred since entry of the judgment. The only extraordinary circumstances relied upon in the motion are NAGE II and the prospect that allowing the award to remain in effect, notwithstanding NAGE II, perpetuates an unfair “two-tier” compensation system. But the judgment took into account the distinct possibility that the arbitrator’s award, if it had been challenged on a timely basis, would have been found unlawful and *535 that the Commonwealth’s failure to have petitioned to vacate might lead to a “two-tier” compensation system. Although NAGE II undoubtedly means that the Commonwealth would have been successful had it timely contested the arbitration award, it does not constitute an extraordinary circumstance justifying the Commonwealth’s failure to appeal from this court’s ruling that the issues to be decided in NAGE II were not relevant to the Union’s petition.
The Commonwealth’s motion is really a veiled motion for reconsideration, even though the Commonwealth states that it does not dispute that this court had the authority to confirm the award given Local 589 and that “its judgment was then and remains now validly entered.” In considering a motion under Rule 60(b)(6), “a judge may consider whether the moving party has a meritorious . . . defense.” Parrell v. Keenan, 389 Mass. 809, 815 (1983) (vacating judgment appropriate where release and agreement for judgment had not been executed by plaintiff or with her authority). Here, the Commonwealth has no meritorious defense. “In essence, rule 60(b)(6) vests ‘power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.’ ” Id., quoting Klapprott v. United States, 335 U.S. 601, 615 (1949). It does not vest power, once that judgment has been vacated, to wipe out a plaintiffs substantive legal rights simply because a judge may believe that a particular statute of limitations would, under the circumstances, be more equitable were it longer. In this case, granting relief from judgment would merely put the action back in the same posture as it was on November 3, 1994, prior to allowance of the Union’s petition. By that date, the Commonwealth had long since missed the statutory deadline for challenging the arbitration award. Undoing the judgment would do nothing to revive the Commonwealth’s ability to seek to vacate the award, which had expired by operation of law. Local 589, 397 Mass. at 431. To use Rule 60(b) (6) to relieve the Commonwealth from its failure to comply with c. 150C, §ll(b) would create an exception to that statute that “would defeat the important policy goals embodied in §ll(b) by creating ‘an exception capable of swallowing the rule.’ ” Id. However costly the result of the Commonwealth’s mistakes may be,[7] Rule 60(b)(6) is not a magic wand that may or should be waved to make the time restrictions imposed by chapter 150C disappear.
ORDER
The defendant’s Motion for Relief from Judgment is DENIED.

The reduction followed the Fiscal Year 1994 and 1995 General Appropriation Acts that mandated an eighty-five percent contribution level to all state employee health insurance plans. St. 1993, c. 110, §1, line item 1108-5200; St. 1994, c. 60, §2, line item 1108-5200.

Upon application of party, the Superior Court shall vacate an award if “the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state . . . law.” G.L.c. 150C, §11(a)(3). Such an application to vacate “shall be made within thirty days after delivery of a copy of the award to the applicant...” G.L.c. 150C, §11(b).

“Upon application of a party, the superior court shall confirm an award, unless within the time limits, hereinafter imposed grounds are urged for vacating, modifying or correcting the award.” G.L.c. 150C, §10.

At the oral argument on the Union’s application to confirm the award, the Union expressed its intent to seek to expedite any such appeal and to seek to consolidate it with the appeal from NAGE I.

The other grounds, none of which are relied upon by the Commonwealth, include “mistake, inadvertence, surprise, or excusable neglect.” Rule 60(b)(1).

The aggregate cost to the Commonwealth for implementing the Court’s order to change the insurance premium deduction taken from the Union’s employees is $70,000 per month.