MASSACHUSETTS WATER RESOURCES AUTHORITY *vs.*
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 93.

No. 05-P-904.

Suffolk. May 3, 2006. - November 13, 2006.

Present: GRASSO, COWIN, & KAFKER, JJ.

*Massachusetts Water Resources Authority. Arbitration,* Arbitrable question. *Public Employment,* Collective bargaining. *Commonwealth,* Collective bargaining. *Insurance,* Group. *Statute,* Construction.

A dispute between the Massachusetts Water Resources Authority (authority) and a labor union concerning the amount that the authority was required to contribute to the health insurance premiums of certain employees was not arbitrable, where the dispute arose from a provision in a collective bargaining agreement that had been superseded by statute. [730-733]

CIVIL ACTION commenced in the Superior Court Department on February 8, 2005.

The case was heard by *Bruce R. Henry,* J.

*Erin L. Goodwin* for the defendant.

*John S. Chinian* for the plaintiff.

COWIN, J. Seeking to enforce a provision of a collective bargaining agreement that required the plaintiff, the Massachusetts Water Resources Authority (authority), to contribute eighty-five percent of its employees' health insurance premiums, the defendant, American Federation of State, County and Municipal Employees, Council 93, a labor organization representing certain employees of the authority (union), demanded that the subject be arbitrated. The authority sought and received from a judge of the Superior Court declaratory and injunctive relief, and the union filed a timely notice of appeal. The case turns on a determination whether that portion of G. L. c. 32A, § 8, that governs the amount of the Commonwealth's

contribution to the cost of health insurance purchased by the Group Insurance Commission for active and retired State employees is applicable to employees of the authority. If it is, then the Legislature has acted expressly on the subject, and its decision cannot be overridden by a collective bargaining agreement. If not, the collective bargaining agreement, with its arbitration provision, controls, and the union is entitled to seek enforcement of the more favorable contractual term. Given that the authority's employees are not ordinary State employees, the question is not free from doubt. We conclude, however, that the judge construed the applicable statutes, and the Legislature's intentions embodied therein, correctly, and we affirm.

1. *Background.* The authority, created in 1984, is "a body politic and corporate and a public instrumentality . . . which shall be an independent public authority not subject to the supervision or control of . . . any . . . executive office, department, commission, board, bureau, agency or political subdivision of the commonwealth except to the extent and in the manner provided in this act." St. 1984, c. 372, § 3(*a*). The authority succeeded to many of the responsibilities previously carried out by the Metropolitan District Commission (commission) with respect to "[p]roviding water supply services and sewage collection, treatment and disposal services" to certain areas within eastern Massachusetts. St. 1984, c. 372, § 1(*a*).

In keeping with the transfer of responsibilities from the commission to the authority, of necessity certain personnel previously employed by the commission were transferred to the new entity. See St. 1984, c. 372, § 4(*g*). While the authority is generally not subject to civil service and other State personnel regulations and procedures, St. 1984, c. 372, § 7(*g*), the Legislature ensured in the authority's enabling act that commission employees would not be deprived of rights that they had acquired in their previous status as State employees. St. 1984, c. 372, § 4(*g*). Thus, the transferred employees undertook their new duties "without impairment of civil service status and seniority and without reduction in compensation, . . . and without loss of accrued rights to holidays, sick leave, vacation and benefits." *Ibid.*

Likewise, the authority's enabling act, St. 1984, c. 372,

provides for various benefits ordinarily enjoyed by employees of the State government in Massachusetts, although the Legislature in certain instances distinguished how those benefits would be provided to former commission employees as opposed to employees newly hired by the authority. Accordingly, authority employees participate in collective bargaining, St. 1984, c. 372, § 7(*c*); are members of a contributory retirement system, § 7(*d*); are eligible for group life, accidental death or dismemberment, and health insurance coverage, § 7(*e*); and are eligible to participate in deferred compensation programs, § 7(*f*). With respect to group insurance, the enabling act provides that "[s]ubject to the last sentence of this paragraph, every employee who upon employment by the Authority is covered by the group insurance provided by chapter thirty-two A of the General Laws[1] shall continue in uninterrupted coverage and all other employees of the Authority are hereby made eligible for said group insurance to the same extent as if they were employees of the commonwealth." St. 1984, c. 372, § 7(*e*). The last sentence of St. 1984, c. 372, § 7(*e*), authorizes the authority "to enter into reasonable alternative and substitute group insurance arrangements providing benefits to its employees substantially equivalent to or superior to benefits under said chapter thirty-two A, and thereupon [it] may cease its arrangements for such benefits under said chapter thirty-two A."

The authority is an "employer" for purposes of public sector collective bargaining. See G. L. c. 150E, § 1. It is required to "negotiate in good faith with respect to wages, hours, standards or[2] productivity and performance, and any other terms and conditions of employment." G. L. c. 150E, § 6, as inserted by St. 1973, c. 1078, § 2. The Commonwealth's contribution to State employees' health insurance premiums is a mandatory subject of collective bargaining. See *National Assn. of Govt. Employees* v. *Commonwealth*, 419 Mass. 448, 451, cert. denied, 515 U.S. 1161 (1995). On December 3, 2001, the authority and

---

[1]Chapter 32A of the General Laws provides for the acquisition of enumerated forms of insurance coverage, including health insurance, by the Group Insurance Commission, see G. L. c. 32A, § 3, for the benefit of certain active and retired "persons in the service of the commonwealth." G. L. c. 32A, § 1.

[2]"[O]r" is presumably intended to be "of."

the union entered into an agreement that governed the period of March 30, 2000, to March 29, 2003. The agreement provided in relevant part that the authority would contribute eighty-five percent of the health insurance premiums of the covered employees, while the employees would be responsible for the remaining fifteen percent. As such, the agreement reflected the ratio of employer to employee contributions that had been in effect with respect to ordinary State employees pursuant to various appropriations acts since fiscal year 1994. *Id.* at 449.[3]

By means of the general appropriations act for fiscal year 2004 (July 1, 2003, to June 30, 2004), the Legislature altered the ratio of employer to employee contributions by providing that the Commonwealth would henceforth pay only eighty percent of health insurance premiums of those employees earning $35,000 or more annually, and only seventy-five percent of health insurance premiums of all employees hired after September 1, 2003. See St. 2003, c. 26, § 2, item 1108-5200. On July 25, 2003, the authority notified the union in writing that it would implement the change effective September 1, 2003, at which time it would commence contributing the reduced amounts of the health insurance premiums of active employees as set forth in the fiscal year 2004 general appropriations act.

Asserting that the contemplated reduction violated the collective bargaining agreement, the union filed a grievance, which was denied by the authority. Pursuant to the agreement, the union then sought arbitration before the American Arbitration Association. The authority sought relief in the Superior Court, asserting that the controversy was not covered by the provision for arbitration. See G. L. c. 150C, § 2(*b*)(2). On cross-motions for summary judgment, the judge, relying in part on *National*

---

[3]General Laws c. 32A, § 8, provides in relevant part that "the commonwealth . . . shall contribute no less than seventy-five percent of the total monthly premium or rate applicable to said coverages." This establishes a floor with respect to the level of the Commonwealth's contribution. "[U]pon approval by way of annual, or more frequent appropriation act, the commonwealth may contribute more than seventy-five percent. . . . The aforesaid ratio shall continue until changed by a subsequent appropriation act." *Ibid.* As indicated, effective in fiscal year 1994, the Legislature set the Commonwealth's share at eighty-five percent for active State employees.

*Assn. of Govt. Employees* v. *Commonwealth*, 419 Mass. at 453-454, declared "that the percentages of contribution by the . . . [a]uthority and its employees for health care premiums are subject to the nondelegable power of the Legislature, pursuant to [G. L.] c. 32A, and are not governed by the terms of the collective bargaining agreement." He accordingly allowed the authority's request for an order staying arbitration, and the union's appeal brings the case here.

2. *Discussion.* The parties' positions are easily stated, but not so easily resolved. The authority views the ratio of the Commonwealth's contributions to its employees' health insurance premiums as entirely a function of statute. See *Group Ins. Commn.* v. *Labor Relations Commn.*, 8 Mass. App. Ct. 753, 759 (1979), *S.C.*, 381 Mass. 199 (1980). General Laws c. 32A, § 8, preserves in the Legislature the right, from time to time, to vary the amounts that will be contributed by the Commonwealth, and to do so by means of periodic appropriations acts. That reserved legislative power cannot be overridden by collective bargaining. See *National Assn. of Govt. Employees* v. *Commonwealth*, 419 Mass. at 453. Indeed, the reserved power to alter the ratio becomes "an implied term that was incorporated into" and becomes part of the collective bargaining agreement, thus effectively insulating changes in the ratio from attack as laws impairing the obligation of contracts. *Id.* at 454-455. Furthermore, G. L. c. 32A, § 8, in which the reserved power reposes, is not among those statutes that have been made subordinate to collective bargaining agreements. See G. L. c. 150E, § 7(*d*).

The union does not contest the above as much as it considers the propositions irrelevant. The essence of the union's position is that the power to alter contribution ratios reserved to the Legislature in G. L. c. 32A, § 8, applies to State employees, and does so for the obvious reason that the State contribution will be defrayed by public funds. By contrast, the employees of the authority are not State employees in the customary sense; their employer's contribution to their health insurance coverage, whether provided by the Group Insurance Commission or otherwise, comes from the private funds of the authority; therefore, assuming that total premiums are paid by someone, it

is a matter of indifference to the Legislature who pays them, and the allocation between employer and employee can consequently be left to collective bargaining. The argument is not without force as a statement of policy that the Legislature could have adopted. In the final analysis, however, we think that the Legislature has not done so, and we conclude that the appropriations act ratios apply to authority employees.

Besides preserving the group insurance enjoyed by those already in Commonwealth service, the authority's enabling act makes all authority employees "eligible for said group insurance to the same extent as if they were employees of the commonwealth." St. 1984, c. 372, § 7(e). We agree that the clause is an implicit acknowledgment that authority employees are not otherwise "employees of the commonwealth." However, for group insurance purposes, they are to be treated "as if they were employees of the commonwealth." While *eligibility* for certain coverage enjoyed by State employees does not of necessity translate into *treatment* of those affected as if they were State employees, we construe the provision to mean that, insofar as group insurance is concerned, authority employees are entitled to all of the benefits, and are subject to all of the responsibilities, as their traditional State employee counterparts. Put differently, they receive the same coverage, file claims in the same manner, and are governed by the same procedural and substantive regulations, including those that govern how the system is supported economically. The Legislature could have, but did not, create a different system for authority employees. See, for example, St. 1984, c. 372, § 7(d), creating a Massachusetts Water Resources Authority Retirement System, "which shall be a separate system from the state employees' retirement system." Rather, it contented itself with providing only that, for group insurance purposes, authority employees shall be treated "as if they were employees of the commonwealth," in effect treating them the same as everyone else.

This conclusion is buttressed by other language in St. 1984, c. 372, § 7(e), specifically the provision that "[t]he share of the commonwealth of the cost of such insurance, with respect to the employees of the Authority, shall be borne by the Authority." The "share of the commonwealth" is that proportion of the

premium that the Commonwealth is authorized to pay pursuant to G. L. c. 32A, § 8, and the applicable appropriations act. It is not some other share negotiated independently of the legislative mandate. In addition, the statutory provision governing the mechanics of payment is consistent with this view. Thus, it is provided in St. 1984, c. 372, § 7(*e*), that "[t]he Authority shall forward its contribution, together with all amounts withheld from the salaries or wages of its employees as provided in . . . section eight of said chapter thirty-two A and all amounts paid by an employee as provided in . . . said section eight, to the state employees group insurance commission." The amounts to which reference is made are the amounts established under G. L. c. 32A, § 8, and the relevant appropriations act; they are not amounts established by a collective bargaining agreement.

The union argues that the authority is empowered to make alternative arrangements for health coverage for its employees, see St. 1984, c. 372, § 7(*e*), in which case it would not be bound by the restrictions of G. L. c. 32A, § 8. This, the argument continues, suggests that the Legislature did not intend to bind the authority to the ratios of G. L. c. 32A, § 8, in the first place because the authority could permissibly seek insurance coverage other than through the Group Insurance Commission. We agree with the authority that the union could have bargained with respect to such a change, but has not sought to do so. Its forbearance is understandable as a practical matter. It is common knowledge that, given the size of the group for which the Group Insurance Commission purchases insurance, that agency is able to negotiate highly desirable coverage which the authority, with its far smaller number of employees, could never hope to duplicate. Thus, the union's characterization of the authority's insurance arrangements through the Group Insurance Commission as a "choice" is somewhat misleading. However, to the extent that a choice is involved, it is one to which the union has tacitly agreed, and it brings with it the restrictions, as well as the benefits, of group insurance participation.

Nor are we persuaded by the union's reliance on certain decisions of the Labor Relations Commission.[4] Those cases involved

---

[4]See *Town of Dennis*, 28 M.L.C. 297 (2002); *Ashburnham-Westminster Regional School District*, 29 M.L.C. 191 (2003).

health insurance coverage purchased by municipalities under the different governing provisions of G. L. c. 32B. Chapter 32B has no provision that is similar to G. L. c. 32A, § 8, and the municipal framework on the subject is so entirely different that it offers no guidance. We conclude that, in providing for the difficult absorption of Metropolitan District Commission responsibilities and employees by the newly-created authority, it was not the Legislature's intention to aggravate the complications by creating two classes of citizens for group insurance purposes. Were it otherwise, we believe that the Legislature would have said so with some clarity. We therefore agree with the motion judge that the parties' collective bargaining provision is superseded by the statute, and the dispute is accordingly not arbitrable.

*Judgment affirmed.*