

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-27-1998

# Local 290 v. SEPTA

Precedential or Non-Precedential:

Docket 96-1760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Local 290 v. SEPTA" (1998). *1998 Decisions*. Paper 122.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-1760

TRANSPORT WORKERS UNION OF AMERICA, LOCAL
290, BY AND THROUGH ITS GUARDIAN AD LITEM,
NICHOLAS R. FABIO; LEONARD F. BROWNA;
WILLIAM HAGGERTY,
Appellants

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION
AUTHORITY; SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY RETIREMENT PLAN FOR
SUPERVISORY, ADMINISTRATIVE AND
MANAGEMENT EMPLOYEES

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 96-cv-00814)

Argued October 14, 1997

BEFORE: STAPLETON, ALITO and ROSENN,
Circuit Judges

(Opinion Filed May 27, 1998)

> Alaine S. Williams (Argued)
> Catherine M. Reisman
> Willig, Williams & Davidson
> 1845 Walnut Street
> 24th Floor
> Philadelphia, PA 19103
>  Attorneys for Appellants

J. Freedley Hunsicker, Jr. (Argued)
Michael D. Homans
Drinker, Biddle & Reath
1345 Chestnut Street
Philadelphia National Bank Building
Philadelphia, PA 19107-3496
 Attorneys for Appellees

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Plaintiffs Transport Workers Union of America, Local 290 ("Transport Workers"), Leonard F. Browna, and William Haggerty instituted this action against Southeastern Pennsylvania Transportation Authority ("SEPTA") and SEPTA's Retirement Plan for Supervisory, Administrative and Management Employees ("SAM Plan"). Plaintiffs claim that defendants violated the Contract Clauses of the United States and Pennsylvania Constitutions by modifying the SAM Plan in August 1995 to require, as a condition of participation, a contribution of employee earnings to the Plan. On cross-motions for summary judgment, the district court granted defendants' motion and denied plaintiffs' motion. This appeal followed. We will affirm.

I.

SEPTA was created pursuant to the Metropolitan Transportation Authorities Act of August 14, 1963 ("MTA Act") and is the sponsor of the SAM Plan, which was established by SEPTA in 1965 and covers approximately 2,300 supervisory and management-level employees. SEPTA was authorized to establish the SAM Plan by the MTA Act, which provides that:

> There shall be established and maintained by the authority a pension and retirement system to provide for payments when due under such system or as modified from time to time by resolution of the [authority's] board. For this purpose, both the board and the participating employees shall make such

2

periodic payments to the established system as may be determined by resolution.

74 Pa. Cons. Stat. Ann. S 1724(c).

Prior to the events giving rise to this litigation, the SAM Plan provided that SEPTA would "contribute . . . such amounts . . . as are required, in accordance with the funding policy established by the Board under the terms and conditions of [the] Plan, to fund the Benefits provided under [the] Plan." App. at A77. The Plan further provided that the "Board shall have the power, at any time and from time to time, . . . to modify, alter or amend the Plan and/or Master Trust in any manner which it deems desirable provided that no amendment . . . may affect the rights, duties or responsibilities of the Trustee without its prior written consent." App. at A116. Prior to October 8, 1995, no employee contribution had been required of employees covered by the SAM Plan.

Effective in December 1995, the SAM Plan was amended by the Board to require that employees covered by the Plan would contribute to it in the future .9% of their earnings up to the Social Security covered compensation level and 1.1% of their earnings above that level. The benefits provided by the Plan were not altered in connection with this amendment. The right to benefits vested as of December 1995 was not affected but payment of the contribution in the future was a condition of accruing any additional benefits under the Plan. Simultaneously, the Board approved, effective October 1995, a three percent wage increase for the individual plaintiffs and others similarly situated.

Plaintiffs' suit seeks declaratory and injunctive relief from the employee contribution requirement. Their complaint asserts that the Board's amendment of the Plan, and the MTA Act under which it was authorized, both violate the Contract Clauses of the United States and Pennsylvania Constitutions.

II.

The United States Constitution provides, in relevant part, that "[n]o state shall enter into any . . . Law impairing the

3

Obligation of Contracts." U.S. Const. art. I, S 10. In order to prove a violation of this constitutional provision, a plaintiff must demonstrate that a "change in state law has `operated as a substantial impairment of a contractual relationship.' " General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978)). Thus, Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial. See Romein, 503 U.S. at 186. If it is determined that a substantial impairment of a contractual relationship has occurred, the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose. See Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 242–44 (1978); Nieves v. Hess Oil Virgin Islands Corp., 819 F.2d 1237, 1243 (3d Cir. 1987). If the impaired contractual relationship is between private parties, the court will defer to the legislative judgment concerning the importance of the public purpose and the manner in which that purpose is being pursued. See Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 412–13 (1983). If the state is a party to the contract, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." United States Trust Co. v. New Jersey, 431 U.S. 1, 26 (1977).

The district court granted summary judgment for defendants on their federal constitutional claims because it concluded that the SEPTA resolution modifying the SAM Plan did not "constitute an exercise of legislative power," Op. at 11, and, accordingly, was not a "law" within the meaning of the Contract Clause. We find it unnecessary to decide this issue. We conclude that even if the Plan is regarded as establishing a contractual relationship and the Plan amendment is considered a "law," plaintiffs have failed to demonstrate that the contractual relationship has been "substantially impaired."

4

"Contracts enable individuals [and public entities] to order their . . . affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." Allied Structural, 438 U.S. at 245. The purpose of the Contract Clause is to protect the legitimate expectations that arise from such contractual relationships from unreasonable legislative interference. Thus, we must determine whether there has been a substantial impairment of a contractual relationship by inquiring whether legitimate expectations of the plaintiffs have been substantially thwarted. We conclude that the Plan Amendment did not frustrate any legitimate expectation of the plaintiffs.

Plaintiffs' argument that the MTA Act itself violates their rights under the Contract Clause need not detain us long. The only legitimate expectations plaintiffs have identified are those allegedly arising from the Plan. The Plan was adopted pursuant to the authority conferred by the MTA Act and, therefore, did not exist prior to its enactment. It necessarily follows that the MTA Act did not substantially impair any contractual expectations of the plaintiffs.

Turning to the plaintiffs' expectations under the Plan, we first note that the Act by which it was authorized expressly contemplated that the provisions of any pension and retirement system created thereunder would be subject to modification from time to time by the Authority's Board and that the employees covered might be required by resolution of the Board to make contributions. See 74 Pa. Cons. Stat. Ann. S 1724(c). The Plan itself also expressly provided that the Board was authorized to amend the terms of the Plan "in any manner which it deems desirable." App. at A116. Moreover, the Plan document contains an elaborate procedure for terminating the Plan. While the document evinces an intent to continue the Plan "indefinitely," it also reserves the right to "discontinue, suspend or reduce [SEPTA's] contributions [to the plan], or to terminate the Plan and/or Master Trust and/or any participating plan therein." App. at A117. The ability to reduce state contributions or terminate the Plan entirely also supports the proposition that SEPTA reserves the right to alter the

5

scheme of funding embodied in the Plan. These provisions of the SAM Plan and the enabling statute give notice that the terms of the Plan are alterable by SEPTA and that an employee contribution may well be required as a condition of participation in the Plan. Under these circumstances, an employee's reasonable expectation from the Plan contract cannot include a guarantee that an employee contribution would never be required.

In support of their contention that they did have legitimate expectations that were thwarted by the Board's amendment, plaintiffs rely primarily on the decision of the Supreme Court of Pennsylvania in Association of Pennsylvania State College and University Faculties v. State System of Higher Education, 479 A.2d 962 (Pa. 1984) ("APSCUF "). The plaintiffs there were covered by Pennsylvania's State Employees Retirement Fund, a statutory retirement program mandated for certain state employees. See 71 Pa. Cons. Stat. Ann. S 5301 et seq. The terms of that program were established in the statute. As originally adopted, the statute required an employee earnings contribution of 5% with the proviso that "in no case shall any member's rate . . . be greater than [the] contribution rate on the effective date of [the Code]." APSCUF, 479 A.2d at 963. The APSCUF litigation arose as a result of a subsequent legislative amendment to the statute that required an additional contribution from covered employees of 1.25% of their earnings. The "only effects [of the amendment were] to increase the contribution required by members and to save the Commonwealth one percent (1%) of its budgeted payroll. The dollar amount of retirement benefits remain[ed] the same; members [were] simply required to pay more for each pension dollar they [would] eventually receive." Id. at 964-65. The Supreme Court of Pennsylvania held that this amendment violated the Contract Clause of both the federal and state constitutions.

Plaintiffs read APSCUF as establishing a rule that under the Contract Clause of the federal constitution, a public employee covered by a pension plan is entitled to the benefits existing at the time her employment commenced without regard to whether the employer has reserved the

6

right to modify the plan at any time. If APSCUF established such a rule, we would not be bound by it. Whether a contract was formed and what terms were included for purposes of the Contract Clause are federal questions. See General Motors Corp. v. Romein, 503 U.S. 181, 187 (1992). But we do not understand the Pennsylvania Supreme Court in APSCUF to be saying anything as novel as plaintiffs suggest. Contrary to plaintiffs' suggestion, that case does not hold that the terms of a public pension plan are irrelevant to a determination of whether rights protected by the Contract Clause have been substantially impaired.

It is helpful to place APSCUF in historic perspective. In Penne v. Reis, 132 U.S. 464 (1889), the Supreme Court held that public employee pension programs constitute gratuities that a state may freely revoke. While Penne has never been expressly overruled, most state supreme courts subsequently rejected the "gratuity" approach in favor of an approach that viewed such programs as creating implied-in-fact unilateral contracts. See Parker v. Wakelin, 123 F.3d 1, 6 (1st Cir. 1997). The modern trend in those courts has thus been to protect pension rights on the theory that a state's promise of pension benefits represents an offer that can be accepted by the employee's performance. See id. They have taken different views, however, regarding the point at which rights under public pension programs become protected from change where no right to modify is expressly reserved by the employer. See, e.g. , Kestler v. North Carolina Local Gov't Employees' Retirement System, 48 F.3d 800, 804 (4th Cir. 1995) (no contract rights prior to retirement); Petras v. State Bd. of Pension Trustees, 464 A.2d 894, 896 (Del. 1983) (rights not subject to change after conditions for vesting under terms of plan satisfied); State of Nevada Employees Assoc., Inc. v. Keating, 903 F.2d 1223, 1227 (9th Cir. 1990) (all employees have contract rights "subject to reasonable modification"); Oregon State Police Officers' Ass'n v. Oregon, 918 P.2d 765, 773 (Or. 1996) (contract formed "on acceptance of employment or after a probationary period"); Booth v. Sims, 456 S.E.2d 167, 184 (W. Va. 1995) (contract formed "after employees have substantially relied to their detriment").

"[P]ublic employee retirement benefits in Pennsylvania are viewed as being part of a contractual agreement between

the public employer and the employee." Newport Township
v. Margalis, 532 A.2d 1263, 1265 (Pa. Commw. 1987)
(citing Wright v. Allegheny County Retirement Bd., 134 A.2d
231 (Pa. 1957)). The terms of the contractual agreement in
APSCUF did not include a reservation by the employer of a
right to modify or terminate the plan. To the contrary, the
terms of the plan specified a rate for the employees'
contributions and expressly provided that that rate should
not be exceeded. The court had no problem determining
that the legislative amendment would constitute a Contract
Clause violation for those employees who had accepted the
state's unilateral offer by serving until the retirement
eligibility requirements have been met. The more serious
issue was whether the same was true with respect to those
employees who had not satisfied those requirements. The
court held that "non-vested state employees are entitled to
the same constitutional protection as vested employees."
APSCUF, 479 A.2d at 965. This conclusion was consistent
with traditional contract principles; when an offeror invites
an offeree to accept by rendering a performance a unilateral
contract is formed when performance begins. See
Restatement of Contracts (Second) S 45(1).

The Supreme Court of Pennsylvania said nothing in
APSCUF about whether state employees covered by a
pension program expressly reserving the right to amend or
terminate their rights have a legitimate contractual
expectancy that can be substantially impaired for purposes
of Contract Clause analysis. It would be inconsistent with
traditional principles of contract law to simply ignore such
a reservation. As the Restatement explains, the rule vesting
unilateral contract rights at the beginning of performance
"is designed to protect the offeree in justifiable reliance on
the offeror's promise, and the rule yields to a manifestation
of intention which makes reliance unjustified. A reservation
of power to revoke after performance has begun means that
as yet there is no promise and no offer." Restatement of
Contracts (Second) S 45, Comment (b).

As we have noted, the purpose of the Contract Clause is
to allow parties to agree upon their respective rights and
obligations and then to protect their expectations from
legislative interference. Given this objective, we conclude

8

that the Contract Clause should not be applied in a manner that would produce a result in direct conflict with the terms of the parties' bargain.

As a matter of federal law, we are aware, of course, that ERISA statutorily prohibits modifications of benefits after they have accrued. We are also aware that the Court of Appeals for the First Circuit has recognized "an emergent common-law rule" that express reservations of the power to modify and terminate are ineffective as to those employees who have satisfied the plan requirements for retirement benefits. See McGrath v. Rhode Island Retirement Bd., 88 F.3d 12, 18 (1st Cir. 1996) (collecting cases). We have found no case, however, holding that an express reservation of a right to modify is ineffective with respect to employees who have not satisfied the plan requirements for retirement benefits. It necessarily follows that we have found no case holding that the rights of such employees under the Contract Clause were violated by an exercise of such an express reservation. Indeed, the First Circuit Court of Appeals in McGrath held to the contrary, see 88 F.3d at 20, and its conclusion is consistent with the other case law we have found dealing with reservations of the right to amend. See, e.g., City of Charleston v. Public Service Comm'n of West Virginia, 57 F.3d 385, 394 (4th Cir. 1995) (holding that a state law did not impair a public contract when the contract expressly stated that its terms were subject to legislative regulations); National Ass'n of Gov't Employees v. Commonwealth, 646 N.E.2d 106, 110-11 (Mass. 1995) (collective bargaining agreement not impaired where legislature reserved power to determine employee health insurance contribution rate); Helicon Corp. v. Borough of Brownsville, 449 A.2d 118, 121 (Pa. Commw. 1982) (cable television contract not impaired by city rate regulation where contract expressly contemplated legislative changes).

In short, we conclude that SEPTA employees enrolled in the SAM Plan had no reasonable expectation when they joined the Plan that a contribution would not be required as a condition for future participation in the Plan.[1] It

_____

1. Note further that the employee earnings contribution requirement is prospective in effect. See App. at A78. Thus, there is no allegation in this

9

necessarily follows that there has been no violation of the Contract Clause of the federal Constitution.

III.

The Contract Clause of the Pennsylvania Constitution provides that "[n]o . . . law impairing the obligation of contracts . . . shall be passed." Pa. Const. art. I, S 17. We are, of course, bound to apply this provision in the same manner it would be applied by the Supreme Court of Pennsylvania. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). That court has held that it is generally to be applied in the same manner as its federal counterpart. See, e.g., First Nat'l Bank of Pennsylvania v. Flanagan, 528 A.2d 134, 135 n.1 (Pa. 1987). Based on this fact and APSCUF, we believe the Supreme Court of Pennsylvania would reach the same conclusions in this case with respect to the Pennsylvania Contract Clause as we have reached in the preceding section with respect to the federal Contract Clause.

IV.

The judgment of the district court will be affirmed.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit
_____

case that employees whose benefits under the Plan have fully vested will be affected by the addition of a contribution requirement. Cf. McGrath v. Rhode Island Retirement Bd., 88 F.3d 12, 20 (1st Cir. 1996) (rights under retirement plan with express reservation clause not subject to Contract Clause challenge until employees' rights have vested).

10